**Pete Michael JONES, Appellant,**

v.

**Sydney BEGGS, Appellee.**

**No. 11–94–026–CV.**

Court of Appeals of Texas, Eastland.

July 20, 1995.

Sherwin A. Winniford, Andy McSwain, Fulbright, Winniford, Bice, & Marable, Waco, for appellant.

Jim Lane, Lane, Lane, Ware & Reyes, John R. Lively, Alan B. Padfield, Fort Worth, for appellee.

Before McCLOUD, C.J. (Retired), and DICKENSON and WRIGHT, JJ.

1. He was one of the two defendants in the trial court, and he is the only appellant.

2. Casey Davis died after a fight with Shawn Wharton, the defendant who is not a party to this appeal. Davis' widow settled her claims, and she did not participate in the trial. Davis' mother was the plaintiff in the trial court, and she is the only appellee.

Opinion

DICKENSON, Justice.

This is an appeal by Pete Michael Jones, a homeowner [1] who was ordered to pay damages to Sydney Beggs. She was the mother of a man [2] who died after a fist fight in Jones' mobile home. The jury found that the homeowner's "gross negligence" was a proximate cause of the death of Casey Davis, and the issue on appeal is whether there is any evidence which is legally sufficient to support that finding. The trial court entered judgment that the decedent's mother recover 30 percent of $300,000 plus prejudgment interest from the homeowner. Since we find no evidence of gross negligence, we reverse the judgment of the trial court insofar as it orders Jones to pay damages; this court renders judgment that Beggs take nothing from that defendant.

### The Jury's Verdict

The questions submitted to the jury, and the jury's answers may be summarized as shown:

(1) On the occasion in question, was Casey D. Davis an invitee or a licensee on Pete Jones' premises?

Answer: Licensee

(2) Was Pete Jones' negligence, if any, a proximate cause of the death of Casey Davis?

(Under the court's instructions, no answer was required because the jury found that Davis was a licensee, not an invitee.)

(3) Was Pete Jones' gross negligence,[3] if any, a proximate cause of the death of Casey Davis?

Answer: Yes

3. The charge to the jury in this case contained the following definition with reference to Question No. 3:
"Gross negligence" means more than momentary thoughtlessness, inadvertence, or error of judgment. It means such an entire want of care as to establish that the act or omission in question was the result of actual conscious indifference to the rights, welfare, or safety of the persons affected by it.

(4) Did the negligence, if any, of the persons named below proximately cause the death of Casey Davis?

    A.  Casey Davis (decedent) <u>Yes</u>

    B.  Shawn Wharton (codefendant) <u>Yes</u>

(5) What percentage of the negligence of Casey Davis and Shawn Wharton and what [percentage of the] negligence or gross negligence of Pete Jones that caused the death of Casey Davis do you find to be attributable to each of the following:

    A.  Casey Davis <u>35%</u>

    B.  Shawn Wharton <u>35%</u>

    C.  Pete Jones <u>30%</u>

(6) What sum of money, if paid now in cash, would fairly and reasonably compensate Sydney Beggs [decedent's mother] for her damages, if any, resulting from the death of Casey Davis?

    Answer: <u>$300,000.00</u>

## Judgment of the Trial Court

The trial court rendered judgment pursuant to the jury's verdict that Beggs recover from Jones the sum of $136,602 (actual damages and prejudgment interest) and post-judgment interest at the rate of ten percent per annum until paid. The judgment also provided that Beggs recover the sum of $159,369 plus post-judgment interest from Shawn Wharton.

## Points of Error

Appellant has briefed five points of error. He argues in Point Nos. 1 and 4 that the trial court erred in overruling his motion for directed verdict, his motion for new trial, and his motion for judgment non obstante veredicto because:

> [Point One] [T]here is *no evidence* to support the jury's finding as to Question No. 3 *regarding gross negligence* of Defendant Pete Jones.

> [Point Four] [T]here is *no evidence* to support the jury's finding as to Question No. 3 *regarding proximate cause* of dam-

ages by any act or omission of Defendant Pete Jones. (Emphasis added)

We sustain these points, and the other points become immaterial and need not be discussed.[4]

## Gross Negligence

The jury in this case was instructed that "Gross negligence" means more than momentary thoughtlessness, inadvertence, or error of judgment. The instruction told the jury that:

> It means *such an entire want of care* as to establish that the act or omission in question was the result of *actual conscious indifference* to the rights, welfare, or safety of the persons affected by it. (Emphasis added).

The Supreme Court recently discussed the meaning of "consciously indifferent" in *Transportation Insurance Company v. Moriel,* 879 S.W.2d 10 at 25 (Tex.1994), saying:

> The question is not whether [the defendant] was unreasonable or whether it "should have known" it was acting in bad faith, but whether [the defendant] was *actually aware of an extreme risk—some genuine and unjustifiable likelihood of serious harm.* (Emphasis added).

While *Moriel* concerned punitive damages, its discussion of "consciously indifferent" is persuasive.

> See also *Universal Services Company, Inc. v. Huy Hieng Khaov Ung et al,* 38 Tex.Sup. Ct.J. 870 at 872 (Tex.1995), where the court said:

> We have recently emphasized that the test for gross negligence contains both an objective and a subjective prong. Objectively, the defendant's conduct must create "an extreme degree of risk." ... Subjectively, the defendant "must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others." Evidence of simple negligence will not suffice to prove either component of gross negligence. (Citations omitted).

---

**4.** Appellant argues in these points that the evidence is "factually insufficient" to support the jury's answer to Question No. 3.

We do not find any competent evidence of conscious indifference which is "legally sufficient" to show that Jones had "actual, subjective awareness" of the decedent's condition prior to the time the ambulance was called or that Jones ever "proceed[ed] in conscious indifference to the rights, safety, or welfare" of the decedent. We have reviewed the evidence under the test stated in *Martinez v. Delta Brands, Inc.*, 515 S.W.2d 263 at 265 (Tex.1974):

> When a party asserts that there is no evidence to support jury findings, we must review the evidence in its most favorable light, considering only the evidence and inferences which support the findings, and rejecting the evidence and inferences contrary to the findings.

### Undisputed Facts

Davis died in the early morning hours of January 9, 1988, in a mobile home which was owned by Jones and which was in a rural subdivision near Mineral Wells. There was a group of nine persons who had been visiting and socializing at Rodeo West, a public bar which closed at midnight. The group included Jones (defendant-appellant); Leigh Hill (Jones' girlfriend); Monroe Lawrence (Jones' out-of-town houseguest); Johnny Wharton, Jr. (codefendant's brother); Jo Penzenick; Davis (plaintiff's son); Kathy Mata; Shawn Wharton (codefendant); and Artie Beck (Leigh Hill's brother). All nine of them went to Jones' mobile home, and they continued their visiting and socializing.

Davis and the two Wharton brothers worked for the company owned by the Wharton brothers' father. All three were friends, and there is no evidence of any problem until shortly before the two fights between Davis and Shawn Wharton. The second fight occurred shortly after the first fight was broken up. The record is clear that the injuries which Davis received in the second fight caused him to die before the ambulance arrived at 1:41 a.m. The record is also clear that Jones is the one who called the ambulance, and the ambulance service business records show that his call was received at 1:24 a.m.

Those business records also show that, when the ambulance arrived at the mobile home, Davis had a blood pressure reading of "none," that his pulse rate was "none," and that his respiration rate was "none." The plaintiff's medical expert and the defendants' medical expert agreed that Davis drowned in his own blood. The two medical experts also agreed that the injuries which Davis received in the fight would not have caused his death if he had not been unconscious and lying on his back. Davis was legally intoxicated at the time of his death; the medical records show that his blood-alcohol ratio was .14 percent. The blood from the broken nose and broken cheek bones drowned him when it ran down into his lungs. The doctors also agreed that it only took five or ten minutes for Davis to die, that trained medical personnel would have been aware of the danger, but that untrained laymen might not have been aware of the risk of death.

### Plaintiff's Theory

The only theory upon which plaintiff could recover would be based upon "gross negligence," and this requires proof that Jones knew that Davis needed medical treatment and that Jones deliberately waited too long before calling the ambulance. All of the evidence is to the contrary. Even when we disregard all of the defendants' evidence, there is no proof to support plaintiff's theory. Plaintiff seeks to establish the time that the second fight ended by taking estimates of time from various witnesses. Even taking plaintiff's time line, it only shows a lapse of about 24 minutes from the end of the second fight until the ambulance was called. That does not show that the homeowner was immediately aware of the need for medical assistance and that he disregarded that need with "actual conscious indifference" until he called the ambulance. Moreover, the ambulance records show that it took the ambulance longer to get to the rural home than the two doctors estimated that it would take for the patient to drown in his own blood. There is no evidence that the homeowner was guilty of gross negligence in failing to move the body. One of the persons at the party attempted without success to administer cardio-pulmonary resuscitation (CPR),

and other guests tried to move Davis to a private vehicle to take him to the hospital before the ambulance finally arrived.

### This Court's Ruling

The judgment of the trial court is affirmed insofar as it awarded damages to Beggs against Shawn Wharton, the defendant who did not appeal. The judgment of the trial court is reversed insofar as it awarded damages against Jones, and this court renders judgment that Beggs take nothing from Jones.

McCLOUD, C.J. (Retired), Court of Appeals, Eastland, sitting by assignment pursuant to TEX.GOV'T CODE ANN. § 74.003(b) (Vernon 1988).

WRIGHT, J., not participating.