Della BISHOP, Appellant,

v.

The CITY OF BIG SPRING, Appellee.

No. 11–94–156–CV.

Court of Appeals of Texas,
Eastland.

Dec. 28, 1995.

Abner Burnett, Burnett & Burnett, Odessa, for appellant.

Kristi Franklin Hyatt, Cotton, Bledsoe, Tighe & Dawson, Midland, for appellee.

Before ARNOT, C.J., and DICKENSON and WRIGHT, JJ.

ARNOT, Chief Justice.

This is a summary judgment case involving the application and interpretation of the Texas Tort Claims Act[1] which waives governmental immunity in limited situations. While walking to her parked car at night, Della Bishop stepped into a hole and suffered a broken leg. The hole contained a water meter box with a defective lid. Bishop sued the City of Big Spring alleging various acts of negligence. The trial court granted the City's motion for summary judgment based upon its assertion of sovereign immunity. We affirm.

The City has governmental immunity. TEX.CIV.PRAC. & REM.CODE ANN. § 101.001(2)(B) (Vernon Supp.1996). The City's maintenance of its water system is a governmental function. TEX.CIV.PRAC. & REM.CODE ANN. §§ 101.0215(a)(11) & (32) and 101.058 (Vernon Supp.1996). Bishop alleges in her petition that the City has waived its immunity under Sections 101.021(2), 101.022, and 101.025 (Vernon 1986).

■ When reviewing a summary judgment, this court will adhere to the following standards:

(1) The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

(2) In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true.

(3) Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

TEX.R.CIV.P. 166a; *Goswami v. Metropolitan Savings and Loan Association*, 751 S.W.2d 487, 491 (Tex.1988); *Nixon v. Mr. Property Management Company, Inc.*, 690 S.W.2d 546, 548–549 (Tex.1985); *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671 (Tex.1979).

The summary judgment proof shows that the hole was located between the fence of Bishop's sister's house and a city street. The summary judgment evidence contains pictures attached to excerpts of depositions. The pictures showed that the level of the ground around the meter box appeared to be six-to-eight inches above the top of the meter box. From the photographs, the grass around the edge of the hole appeared to be

---

1. TEX.CIV.PRAC. & REM.CODE ANN. § 101.001 et seq. (Vernon 1986 & Supp.1996).

about two inches taller than the grass around it. The hole appeared to be a foot and one-half in diameter. The lid to the box was rectangular. The summary judgment evidence was that the lid did not fit and that, when placed squarely on top of the box, the lid would fall through if any weight was placed on it.

In her amended petition, Bishop alleges that the City was negligent and grossly negligent in the following acts:

1. In failing to warn of a special defect; specifically, the failure to warn of the uncovered water meter hole which caused the Plaintiff's injuries;

2. In failing to warn of or make safe a condition which constituted a danger; specifically, the negligent installation of a water meter and its cover;

3. In failing to use equipment available to the county which would have warned the Plaintiff of the absence of a cover to the water meter hole;

4. In the negligent use of the water meter cover used to cover the hole where the water meter was placed;

5. In the negligent use of tangible property, shovels or other digging instruments, when installing the water meter where Plaintiff fell;

6. In the failure to use or misuse of forms for reporting irregularities or apparent dangers at water meter sites which were checked monthly;

7. In the negligent use of the water meter cover at such time when the water meter which injured Plaintiff was either read or serviced;

8. In their installation and use of the water meter hole;

9. In their use of the water meter hole cover;

10. In their failure to use materials available to them and at their disposal in order to make the condition of the water meter hole, whether covered or uncovered, more conspicuous; and

11. In the positioning of the water meter hole.

First, Bishop alleges that the open, defective water meter box was a "special defect" and a "premise defect." A governmental unit in the state is liable for personal injury caused by a condition of real property if the governmental unit would, if it were a private person, be liable to the claimant according to Texas law. Section 101.021(2).

■ If the condition of the water meter box hole was a "premise defect," then the City owed Bishop the same duty that a private landowner owed a licensee. Section 101.022(a); *State Department of Highways & Public Transportation v. Payne*, 838 S.W.2d 235 (Tex.1992). That duty requires that a landowner use ordinary care either to warn a licensee of, or to make reasonably safe, a dangerous condition of which the owner is aware and *the licensee is not. State Department of Highways & Public Transportation v. Payne*, supra; see also RESTATEMENT (SECOND) OF TORTS § 342 (1965).

■ Summary judgment evidence must be viewed in favor of the non-movant. *Nixon v. Mr. Property Management Company, Inc.*, supra. However, in this case, the only summary judgment evidence presented shows that Bishop was aware of the "premise defect." Bishop, by deposition, testified that her sister had repeatedly warned her about the hole and its danger. Having visited her sister several times, Bishop acknowledged that she knew where the hole was and knew of its condition. Dolly Woodard, Bishop's sister, testified that she warned Bishop about the hole because another visitor had previously fallen into it. James Headrick, Bishop's nephew and Woodard's son, also testified by deposition that Bishop knew of the location and condition of the hole. Because the summary judgment evidence conclusively establishes that Bishop had knowledge of the dangerous condition of the water meter box hole, Bishop cannot establish that the City has waived its immunity from a standard of ordinary care as to a premise defect under Sections 101.021(2) and 101.022(a).

■ The City, as a landowner, also owed Bishop, as a licensee, the duty not to injure her by willful, wanton, or grossly negligent conduct. *State Department of Highways & Public Transportation v. Payne*, supra;

*State v. Tennison,* 509 S.W.2d 560 (Tex.1974). Bishop argues that the summary judgment evidence raises a material question of fact as to whether the City was grossly negligent. Bishop urges that the City's employees read the water meter monthly for a period of over five years. Robert Langford, a City meter reader, testified that he had read the meter in dispute and that he was supposed to have reported problems with water meter covers. Leslie Hooper and Clarence Ross, City meter readers, also were familiar with this meter and stated that they would consider it a danger to people walking nearby. Because of the length of time that the meter box, its faulty lid, and the hole were in this condition, Bishop contends that there are fact questions presented as to whether the City was consciously indifferent to a dangerous condition about which they knew and as to whether the City exhibited a reckless disregard for the safety of others.

Gross negligence means more than momentary thoughtlessness, inadvertence, or error of judgment. It means such an entire want of care so as to establish that the act or omission was the result of actual conscious indifference to the rights, safety, or welfare of the persons affected. See former TEX.CIV.PRAC. & REM.CODE § 41.001(5).[2] Gross negligence differs from ordinary negligence. The defendant must be consciously indifferent and his or her conduct must create an extreme degree of risk. *Wal–Mart Stores, Inc. v. Alexander,* 868 S.W.2d 322 (Tex.1993).

In *Transportation Insurance Company v. Moriel,* 879 S.W.2d 10 (Tex.1994), the court stated how these two elements of gross negligence are to be reviewed on appeal:

(1) viewed objectively from the standpoint of the actor, the act or omission must involve an extreme degree of risk, considering the probability and magnitude of the

potential harm to others, and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others.

In *Moriel,* the court noted:

Extreme risk is a function of both the magnitude and probability of the anticipated injury to the plaintiff. As we said in *Wal–Mart,* the "extreme risk" prong is not satisfied by a remote possibility of injury or even a high probability of minor harm, but rather "the likelihood of serious injury to the plaintiff."

An act or omission that is merely thoughtless, careless, or not inordinately risky cannot be grossly negligent. Only if the defendant's act or omission is unjustifiable and likely to cause serious harm can it be grossly negligent. (Citations omitted)

Unlike a trial on the merits, as in *Moriel,* where the licensee must prove that the actor or licensor was grossly negligent by a preponderance of the evidence, the issue before us is whether, by summary judgment proof, the City has established as a matter of law that it was not grossly negligent. Taking as true the summary judgment evidence favorable to Bishop and indulging every reasonable inference in her favor, we conclude that the acts of the City could not have been grossly negligent as that term is defined under the statute and *Moriel.*[3] The presence and condition of the hole do not rise to the level of an "extreme degree of risk"; the City's maintenance of its water meters does not indicate an "entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference." *Universal Services Company, Inc. v. Ung,* 904 S.W.2d 638 (Tex. 1995); *Jones v. Beggs,* 905 S.W.2d 29 (Tex. App.—Eastland 1995, no writ).[4] The City

---

2. We note that, subsequent to the trial of this case, Section 41.001(5) was amended and no longer defines gross negligence. See Act of April 20, 1995, 74th Leg., R.S., ch. 19, § 1 (effective September 1, 1995).

3. We have assumed that the City had knowledge of the condition of the hole, box, and defective lid. The City offered summary judgment evidence that no one in authority had been advised of the condition of the hole, box, or lid.

4. See also *Driver v. Worth Construction Company,* 154 Tex. 66, 273 S.W.2d 603 (1954), a pre-*Moriel* case in which the court held that the failure to erect a barricade around a premise defect constituted only simple negligence and not gross negligence.

has not waived its sovereign immunity for the "premise defect."

■■■ Second, if the condition of the water meter box hole was a "special defect," then the City owed Bishop the same duty that a private landowner owed an invitee. Section 101.022(b); *State Department of Highways & Public Transportation v. Payne,* supra. That duty requires an owner to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premise condition of which the landowner is or reasonably should be aware. With regard to a cause of action for a "special defect," unlike a "premise defect," the claimant does not have to prove that he did not know of the dangerous condition. *State Department of Highways & Public Transportation v. Payne,* supra.

■■■ Whether a condition is a "special defect" is a question of law for the courts to decide. *Turvey v. City of Houston,* 602 S.W.2d 517 (Tex.1980); *County of Harris v. Eaton,* 573 S.W.2d 177 (Tex.1978); *Blankenship v. County of Galveston,* 775 S.W.2d 439 (Tex.App.—Houston [1st Dist.] 1989, no writ). The trial court held that the hole was not a "special defect."

■■■ "Special defects" are excavations or obstructions on highways, roads, or streets or the absence, condition, or malfunction of traffic signs, signals, or warning devices. Section 101.022(b). The examples set forth in the statute all present unexpected and unusual danger to the ordinary user of the roadway. However, conditions threatening normal use of a road may be "special defects" even though they do not occur on the surface of the road. See, e.g., *Andrews v. City of Dallas,* 580 S.W.2d 908 (Tex.Civ.App.—Eastland 1979, no writ) (base of the traffic signal located six inches above the road); *City of Austin v. Cooksey,* 561 S.W.2d 874 (Tex.Civ. App.—Eastland), *rev'd on other grounds,* 570 S.W.2d 386 (Tex.1978) (improperly secured light pole near excavation sight).

■■■ We agree with the trial court that, as a matter of law, the water meter box hole was not a "special defect." The summary judgment evidence clearly shows that the water meter was between a mailbox situated on the side of the road and the fence to Bishop's sister's house. Although the box was located on the City's property, the condition of the hole did not create a hazard or danger to the normal users of the road as contemplated by Section 101.022(b) so as to make it a "special defect." The normal users of the road would not normally travel closer to the house than the mailbox and would not encounter the hole.

Finally, Bishop argues that the City has waived liability under Section 101.021(2) by the non-use of tangible personal property. Section 101.021(2) provides that a governmental unit in the state is liable for personal injury caused by a use of tangible personal property if the governmental unit would, were it a private person, be liable to the claimant according to Texas laws.

Bishop urges that there is summary judgment evidence from two meter readers that there were forms available for use in notifying the City of hazards or defects in the condition of the meter but that the forms were never used to notify supervisors. Bishop urges that the failure to use the forms was the misuse of tangible property as discussed in *Robinson v. Central Texas MHMR Center,* 780 S.W.2d 169 (Tex.1989). Bishop also alleges that the City's employees failed to use a shovel to clear away the grass which had grown around the hole, making the hole harder to detect.

■■■ In *Kassen v. Hatley,* 887 S.W.2d 4 (Tex.1994), decided after *Robinson,* the court said:

We have never held that a non-use of property can support a claim under the Texas Tort Claims Act. Section 101.021, which requires the property's condition or use to cause the injury, does not support this interpretation.

It is clear from her allegations that Bishop is claiming that her injuries arose from the non-use of tangible personal property and not from their misuse. See *University of Texas Medical Branch at Galveston v. York,* 871 S.W.2d 175 (Tex.1994); *Harrison v. Texas Board of Pardons and Paroles,* 895 S.W.2d 807 (Tex.App.—Texarkana 1995, writ den'd). See also *Russell v. City of Seymour,*

836 S.W.2d 283 (Tex.App.—Eastland 1992, writ den'd), in which this court examined the distinction between use and non-use of tangible personal property in *Lowe v. Texas Tech University,* 540 S.W.2d 297 (Tex.1976). Alleging the non-use of personal property, Bishop cannot maintain a claim under Section 101.021(2) of the Texas Tort Claims Act.

Because the City has not waived its governmental immunity, the judgment of the trial court is affirmed.