**Vera Bell ROBINSON, Petitioner,**

v.

**CENTRAL TEXAS MHMR
CENTER, Respondent.**

No. C–8177.

Supreme Court of Texas.

Nov. 22, 1989.

Mary Noel Golder, Guy D. Choate, San Angelo, for petitioner.

Robert D. Batjer, Jr., Abilene, for respondent.

DOGGETT, Justice.

This action presents the issue of whether governmental immunity has been waived under section 101.021 of the Texas Tort Claims Act. Vera Bell Robinson (Petitioner) sued the Central Texas MHMR Center (MHMR) for the death by drowning of her adopted son and biological grandson, Tommy Robinson (Robinson). The trial court rendered judgment against MHMR based on a jury verdict favorable to Petitioner. The court of appeals reversed on the basis of governmental immunity. 758 S.W.2d 394. We reverse the judgment of the court of appeals and remand the cause to that court for consideration of points it did not reach.

In May 1984 employees of MHMR took several patients, including Robinson, to swim at a local lake. These employees were aware that Robinson suffered from epileptic seizures that occasionally caused him to lose consciousness. MHMR was responsible for patients being dressed in appropriate swimming attire. Although life preservers were available and had been previously supplied to another patient, Robinson was not equipped with one, and he subsequently drowned. Petitioner contends that MHMR's failure to provide a life preserver brings this case within the purview of section 101.021(2) so that governmental immunity is waived. That section provides:

A governmental unit in the state is liable for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law; and

(2) *personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private*

*person, be liable to the claimant according to Texas law.*

Tex.Civ.Prac. & Rem.Code Ann. § 101.021 (Vernon 1986) (emphasis added).[1] MHMR contends that the mere failure to provide a life preserver does not constitute a "condition or use of tangible property" and is thus not actionable under section 101.-021(2).

This waiver provision has, since its inception, been a fertile field for litigation and controversy. Though this problem was made known over thirteen years ago, the legislature has not acted to correct it. In *Lowe v. Texas Tech University*, 540 S.W.2d 297 (Tex.1976), Chief Justice Greenhill, in a concurring opinion, stated:

> The purpose of this concurring opinion is to encourage the Legislature to take another look at the Tort Claims Act, and to express more clearly its intent as to when it directs that governmental immunity is waived. Speaking at least for myself, it is difficult to understand the language of the present statute and to apply it.
>
> \* \* \* \* \* \*
>
> In any event, the Legislature will be in session in the near future; and it would be very helpful if it would give litigants and the courts guidelines which are easier to follow.

540 S.W.2d at 301, 303. Seven years later, in *Salcedo v. El Paso Hospital District*, 659 S.W.2d 30, 32 (Tex.1983), this court

unanimously noted both the continuing inaction of the legislature to address this "troublesome waiver provision" and the "susceptibil[ity] to broad or narrow interpretations" of this section.

In both *Lowe* and *Salcedo*, this court recognized that the Texas Tort Claims Act calls for liberal construction to achieve its purposes.[2] In both cases we interpreted the Act broadly, holding that the plaintiff had stated a claim of injury caused by a condition or use of property within the Act's waiver provisions.

Regrettably, seven legislative sessions have come and gone since Chief Justice Greenhill's request for clarification in *Lowe*.[3] Clear and practical guidelines for application of the waiver of governmental immunity contained in section 101.021(2) should be provided by the legislature. Without such guidelines, litigants, attorneys, and the courts will continue to struggle. We once again call on the legislature to clarify, as soon as possible, the extent to which it intended to waive governmental immunity.

We recognize, as the dissent states, that the legislature has no duty "to clarify its enactments to suit this court."[4] Subsequent to our decision in *Lowe*, however, the legislature amended the waiver provision to further define the term "state government" and to modify the limitations of liability contained therein. Acts 1983, ch. 530, § 1, 1983 Tex.Sess.Law Serv. 3084,

---

**1.** MHMR's status as a "governmental unit" as defined under the Texas Tort Claims Act, Tex. Civ.Prac. & Rem.Code Ann. § 101.001(2) (Vernon Supp.1989), is undisputed.

**2.** *Lowe*, 540 S.W.2d at 298; *Salcedo*, 659 S.W.2d at 32. Prior to codification in the Texas Civil Practice and Remedies Code, the Texas Tort Claims Act provided that its provisions "shall be liberally construed to achieve the purposes hereof." Tex.Rev.Civ.Stat.Ann. art. 6252–19, § 13 (Vernon 1970) (repealed). The codified version is now subject to interpretation in accordance with section 311.023 of the Code Construction Act, Tex.Gov't Code Ann. (Vernon 1988), to give effect to the "object sought to be attained" by the Act.

**3.** As a result of this legislative silence, this court is better analogized to Alice rather than the dissent's philological Humpty Dumpty. In response to Alice's complaint that she doesn't un-

derstand what Humpty Dumpty means in his impenetrable employment of a particular word, he states: "Of course you don't—till I tell you." L. Carroll, *Through the Looking–Glass*, ch. VI, at 163 (W.W. Norton & Co.1971). Humpty Dumpty was willing to explain the meaning of his words; the Texas Legislature has not attempted to do so despite repeated requests for definitional assistance.

**4.** Legislative inaction following judicial interpretation has been found by this court to evidence legislative adoption of such interpretation. *Allen Sales and Servicenter, Inc. v. Ryan*, 525 S.W.2d 863, 866 (Tex.1975). *Cf. Direlco, Inc. v. Bullock*, 711 S.W.2d 360, 363–64 (Tex. App.—Austin 1986, writ ref'd n.r.e.) (inaction following construction by administrative agency).

3084–85 (Vernon). The language premising waiver on "some condition or some use of tangible property" was unchanged. *Id.* at 3085. Further, in 1985, the legislature repealed the original Texas Tort Claims Act, Tex.Rev.Civ.Stat.Ann. art. 6252–19 (Vernon 1970), and reenacted it with some language changes and deletions in reorganized form as part of the Texas Civil Practice and Remedies Code. Acts 1985, ch. 959, § 1, 1985 Tex.Sess.Law Serv. 3242, 3303 (Vernon) (codified version); *Id.,* § 9, 1985 Tex.Sess. Law Serv. at 3322 (repealer). The codified version carried forward the waiver of governmental immunity based on "a condition or use" of tangible personal property. *Id.,* § 1, 1985 Tex. Sess.Law Serv. at 3303. The fact that both the amended and codified versions of the waiver provision preserved the "condition or use" language considered by this court in *Lowe* and *Salcedo* indicates a legislative adoption of the construction given in those cases. "The rule is well settled that when a statute is re-enacted without material change, it is presumed that the legislature knew and adopted the interpretation placed on the original act and intended the new enactment to receive the same construction." *Coastal Industrial Water Authority v. Trinity Portland Cement Division,* 563 S.W.2d 916, 918 (Tex.1978); *accord Wich v. Fleming,* 652 S.W.2d 353, 355 (Tex. 1983).

The dissent recognizes that the statutory waiver provision is both "difficult to understand and difficult to apply." We agree with that characterization but do not view it, as the dissent does, as an excuse to shirk our duty to interpret and apply the statute. Rather than trespassing upon the legislative province, our decision today appropriately weighs prolonged legislative silence and implicit acquiescence in precedent of this court. Contrary to the view of the dissent, we are obligated as judges to decide cases in a rational manner on the basis of principles established in prior cases.

The dissent offers no convincing reason to distinguish this case from *Lowe,* and we find none.

Accordingly, we decide this case on the basis of our interpretation set forth in *Lowe.* In that case, a football player allegedly entered the game with a knee brace, but took it off during the game on the coach's orders. He was thereafter injured. The court held that Lowe, the football player, stated a cause of action within the purview of the statutory waiver of immunity arising from some condition or some use of tangible property. The court further stated:

> So we also hold that Lowe's allegations of a negligent failure to furnish him proper protective items of personal property, to be used as a part of the uniform furnished him, bring his case within the statutory waiver of immunity arising from some condition or use of personal property.

*Lowe,* 540 S.W.2d at 300.[5]

In the case now before us, MHMR employees were responsible for seeing that those for whom they cared were dressed in proper swimming attire. Although life preservers were available, none was provided to Robinson. A life preserver was just as much a part of Robinson's swimming attire as the knee brace was part of the uniform in *Lowe.* In *Lowe,* we held that a cause of action was stated within the waiver of immunity based on the failure to provide a knee brace. In the instant case, there is an allegation of liability based on the failure to provide a life preserver. Under *Lowe,* Petitioner should recover.

We reverse the judgment of the court of appeals and remand the cause to that court for consideration of the points it did not reach.

SPEARS, J., concurs.

COOK, J., dissents.

---

5. The quoted language from *Lowe* cannot be characterized as "essentially dicta," as the dissent claims. Two questions were presented in that case, and two answered. There is no basis to declare one the holding and the other dicta, or vice-versa. Nor did *Salcedo* modify or overrule either holding in *Lowe.* Rather, the *Salcedo* opinion relies heavily on *Lowe* as precedent and, consequently, is a reaffirmation of the result there reached.

HECHT, J., files a dissenting opinion in which PHILLIPS, C.J., and COOK, J., join.

SPEARS, Justice, concurring.

I concur in the court's opinion because legislative silence since our decision in *Lowe v. Texas Tech University,* 540 S.W.2d 297 (Tex.1976) is tantamount to legislative approval of the statutory construction set forth in that opinion. If there has been some sort of judicial usurpation as the dissent asserts, then it is a usurpation that occurred over thirteen years ago and the legislature has long since acquiesced. Courts have repeatedly held that a negligent *failure* to furnish an item of property comes within the statutory waiver of immunity for "a condition or use" of property. *E.g., Trinity River Authority v. Williams,* 689 S.W.2d 883 (Tex.1985) (failure to provide warning signs or barrier cable across river); *Lowe* (failure to furnish knee brace); *Overton Memorial Hospital v. McGuire,* 514 S.W.2d 79 (Tex.Civ.App.— Tyler 1974), *writ ref'd n.r.e. per curiam,* 518 S.W.2d 528 (Tex.1975) (failure to provide bed rails); *Mokry v. University of Texas Health Science Center,* 529 S.W.2d 802 (Tex.Civ.App.—Dallas 1975, writ ref'd n.r.e.) (failure to provide proper laboratory equipment). Today, the court says nothing new. This decision is merely a reaffirmation of prior holdings.

HECHT, Justice, dissenting.

It may truly be said of the Texas Tort Claims Act that bad law makes hard cases.[1] This is a hard case in that it turns upon a statutory basis for waiver of governmental immunity—use of property—that has been, since first devised by the Legislature, difficult to understand and even more difficult to apply. However laudable resolution of this confusion would be, it cannot justify the Court's pretension today that "use" really means "failure to use". By this illusive reading of the statute the Court significantly but tacitly moves the legislated boundaries of governmental immunity in Texas. Whatever the Tort Claims Act

means, it is undeniably *not* a complete waiver of governmental immunity. In the guise of construing difficult statutory language, the Court simply arrogates to itself the exercise of legislative prerogative, a venture in which I cannot join. I therefore dissent.

Robinson alleges, and the jury found, that employees of a state mental health center proximately caused the death of her mentally disabled grandson by negligently failing to provide him with a life preserver to use while swimming. Robinson claims that the mental health center is liable for her grandson's death under that portion of the Texas Tort Claims Act which makes a state governmental unit as liable as if it were a private person for personal injury and death proximately caused "by a condition or use of tangible personal or real property". Tex.Civ.Prac. & Rem.Code Ann. § 101.021 (Vernon 1986). Robinson does not assert any other basis of liability and acknowledges that recovery against the mental health center is barred by governmental immunity except as allowed by this statutory provision. Robinson's sole contention is that the failure to provide a life jacket is a "use of tangible personal property" under the Act. In other words, Robinson argues that "use" of property includes "non-use" of property.

The notion that a single word can have directly opposite meanings at the same time might seem to a reader of ordinary sensibility at least strange if not absurd. Yet the Court unabashedly accepts this remarkable proposition for what appear to be three reasons.

First, the Court observes that the Act should be liberally construed. Although the Court does not elaborate upon this observation, I assume it intends to suggest that "use" may be liberally construed to mean "non-use". Not even the tired talisman of liberal construction can give a word opposite meanings. Liberal construction is not a valid excuse for the Court's holding in this case.

---

1. "Great cases, like hard cases, make bad law." *Northern Securities Co. v. United States,* 193 U.S. 197, 400, 24 S.Ct. 436, 486, 48 L.Ed. 679 (1903) (Holmes, J., dissenting).

Second, the Court complains that the Legislature has not chosen to clarify the language of the Tort Claims Act in response to a suggestion made in a concurring opinion in *Lowe v. Texas Tech University*, 540 S.W.2d 297, 301 (Tex.1976) (Greenhill, C.J., concurring), and reiterated in *Salcedo v. El Paso Hospital District*, 659 S.W.2d 30, 32 (Tex.1983). The Court again summons the Legislature "to clarify, as soon as possible," the extent to which it intended to waive governmental immunity. If the Court's request for guidance today were genuine, it might be commended for seeking direction from the Legislature, although the Legislature has no duty I know of to clarify its enactments to suit this Court. But I doubt that the Court really expects legislative clarification of the Tort Claims Act. The Court is well aware that waiver of governmental immunity is a controversial political issue that the Legislature is not likely to revive.[2] The Court's purpose in calling for clarification is not, I think, to motivate the Legislature, but to use the Legislature's very predictable silence to justify its own misreading of the statute.

However troublesome the Court may find the Tort Claims Act, at least two principles are established and unchallenged. One is that "the waiver of governmental immunity is a matter addressed to the Legislature", as this Court reaffirmed in *Lowe v. Texas Tech University*, 540 S.W.2d 297, 298 (Tex.1976), the principal case upon which the Court relies. Another is that "for the Legislature to waive the State's sovereign immunity, it must do so by clear and unambiguous language." *Duhart v. State*, 610 S.W.2d 740, 742 (Tex.1980). The Court does not impugn either of these propositions, but neither does it acknowledge them. If these principles alone do not require a result contrary to that the Court reaches, they certainly do not permit the Court to reach the result it does. The Court does not say, and I cannot imagine that it could say, that by allowing the State

to be sued for the use of property, the Legislature clearly and unambiguously intended to allow the State to be sued for the non-use of property as well.

The third reason, and the main one, that the Court gives for holding in effect that "use" means "non-use" is that it reached the same conclusion in *Lowe v. Texas Tech University*, 540 S.W.2d 297, 298 (Tex.1976). I disagree that *Lowe* is indistinguishable from this case. Even if it were, however, it would not justify the Court's holding today. Precedent should not be used to perpetuate nonsense.

*Lowe* is distinguishable from the present case. In that case:

Lowe alleged that he sustained an injury to his left knee while playing varsity football for Texas Tech; and that on a later occasion the knee was reinjured, the result of which was total and permanent disablement. He further alleged, as pertinent here, that "the coaching staff, management, and trainers" of Texas Tech were negligent in these respects:

In failing to furnish proper equipment, braces, and/or supporting devices to Plaintiff;

In failing to permit Plaintiff to wear proper equipment, braces and supporting devices available;

In furnishing equipment, uniforms and pads which were defective;

In refusing to permit Plaintiff to wear proper and correctly prescribed equipment, braces and supporting devices.

*Id.* at 298. The trial court held, based solely on Lowe's pleadings, that his action was barred by governmental immunity, and the court of appeals affirmed. This Court framed the issues presented on appeal as follows:

The allegations in the case at bar require a construction of the statutory language of the Tort Claims Act in two respects: whether the waiver of immunity is invoked by allegations that Texas Tech through its authorized personnel

---

2. The Court's peculiar awareness of the political sensitivity of the Tort Claims Act arises from the fact that three members of the Court were serving in the Legislature when the Act was passed, and one of the three was the Senate sponsor of the bill. What could not be accomplished by the legislative process is now done by judicial fiat.

was negligent in affirmatively furnishing "equipment, uniforms and pads which were defective"; and, whether the waiver is also invoked by the allegations of negligent acts of failure to furnish proper equipment and failure or refusal to permit the wearing of proper equipment. *Id.* at 300. The Court answered both questions posed affirmatively. Either was sufficient basis for reversing the dismissal of Lowe's cause for failure to state a claim. As to the latter question, the Court reasoned:

A football uniform is composed of various items of individualized equipment and the protective equipment furnished players may vary with the individual because of his physical characteristics and the hazards of the particular position he plays. Football uniforms are designed to protect players from injury and players who have suffered a previous injury are commonly furnished special protective devices and equipment. Both the standard and specially designed protective devices are integral parts of the football uniform, e.g., special taping or knee braces furnished a player with an injured knee are as much a part of his uniform as his helmet, or shoulder pads, or whatever. So we also hold that Lowe's allegations of a negligent failure to furnish him proper protective items of personal property, to be used as a part of the uniform furnished him, bring his case within the statutory waiver of immunity arising from some condition or some use of personal property.

*Id.* To fit this reasoning to the present case, the Court declares that a life preserver is just as much a part of swimming attire as a knee brace is part of a football uniform. The analogy is tenuous at best.

What the Court omits from its summary of *Lowe* is the alternative holding that a governmental unit may be liable for furnishing defective property. I agree with this holding of *Lowe* and disagree only with what is essentially dicta that a governmental unit may also be liable for failing to

furnish property[3]. I disagree because "use" cannot mean "non-use", and if it did, the waiver of immunity in the Tort Claims Act would be virtually absolute and not limited. As Chief Justice Greenhill observed in his concurring opinion in *Lowe:*

If the words "caused from some condition or use" of property are intended as words of a *limited* waiver of immunity, and if the waiver is intended to be confined to cases involving injury proximately caused by some condition or use of property which is owned or furnished by the State, we reach certain results.

But if they mean that the Legislature intended for the State to be liable in every tort case in which personal property was either used or not used, then we reach different results. This construction would amount to a general waiver in virtually all tort cases. That is not necessarily bad, but I do not think this is what the Legislature intended. It is difficult to imagine a tort case which does not involve the use, or nonuse, of some item of real or personal property; and to me, if there is a waiver in all cases where some item of personal property is either used or not used, there is virtually an unrestricted waiver of immunity.

*Id.* at 301–02.

The Court's elliptical discussion of *Lowe* is the foundation for its principal argument: that by amending the Tort Claims Act since *Lowe* was decided, the Legislature has acquiesced in *Lowe*'s construction of the Act. It is true that, as a rule, the Legislature is presumed to accept the known judicial interpretation of a statute when it re-enacts that staute without material change. Assuming the application of the rule to the Tort Claims Act, it still does not follow that the Legislature has accepted all the language of *Lowe*. The Legislature may well have accepted the result in *Lowe*—that Lowe pleaded a claim not barred by governmental immunity—which was correct. Specifically, the Legislature may have accepted that Lowe's allegation that Texas Tech employees were negligent

**3.** This latter language from *Lowe* is essentially dicta and not simply an alternative ground of decision because it is broader than necessary to support the result in that case.

in furnishing him defective equipment stated a claim not barred by governmental immunity. However, the Legislature need not have accepted, and therefore cannot be presumed to have accepted, that Lowe's complaint of the failure to furnish equipment also stated a claim not barred by governmental immunity.

.There are at least two additional infirmities with the Court's argument that the Legislature is presumed to have accepted language in *Lowe* that failure to use property is the use of property. Since *Lowe*, this Court has defined "use" in the context of the Tort Claims Act to mean " 'to put or bring into action or service; to employ for or apply to a given purpose.' " *Salcedo v. El Paso Hosp. Dist.*, 659 S.W.2d 30, 33 (Tex.1983). The Court cites *Salcedo* in passing but does not mention the definition of "use" in that case which excludes "non-use". Nor does the Court mention the acknowledgment in *Salcedo* that the waiver of governmental immunity under the Tort Claims Act is limited. *Salcedo*, 659 S.W.2d at 31. The presumption that the Legislature accepted the holding in *Lowe* applies equally to *Salcedo*. The only way the Legislature could have accepted both is by acquiescing in only the result of *Lowe* and not all its language.

Furthermore, if "use" meant "non-use", then the Tort Claims Act would waive governmental immunity in all cases, because every case necessarily involves either a use or a non-use of real or personal property. The Legislature indisputably did not intend such an absolute waiver. The bill which was finally enacted as the Tort Claims Act in 1969, Tex.H.B. 456, 61st Leg., contained an absolute waiver of governmental immunity. *See Lowe*, 540 S.W.2d at 302. Before that bill passed both houses of the Legislature, however, another bill, Tex. H.B. 117, 61st Leg., providing for a much more limited waiver passed and was sent to the Governor. *See id.* The Governor vetoed the limited waiver of immunity, stating:

I realize that the time has arrived when the doctrine of absolute governmental immunity must be reconsidered. This bill, however, is so broad and all-encompassing in scope as to impose upon the taxpayers of the State of Texas an onerous burden. It is my belief that a more limited modification of the doctrine of governmental immunity should be considered by the Legislature....

1969 Journal of the Texas House of Representatives, 61st Leg., Reg. Sess. 1621. The Legislature quickly acceded to the additional limitations suggested by the Governor and passed an amended version of H.B. 456, which was even more limited than H.B. 117. *See* Greenhill & Murto, *Governmental Immunity*, 49 Texas L.Rev. 462, 467–468 (1971). This bill the Governor signed. The Court's equating "use" with "non-use" contradicts the clear intent of both the Governor and the Legislature to limit the waiver of governmental immunity.

I confess that not all the consequences of construing "use" to exclude "non-use" seem entirely sensible. For example, had the state mental health center in this case negligently supplied Robinson's grandson with a defective life preserver, resulting in his death, its liability would be beyond question. Why is failing to supply a life preserver less culpable? The answer, whether the Court likes it or not, is simply that the Legislature has exercised its exclusive prerogative to waive governmental immunity as to one but not the other. I do not argue that the Legislature's decision was wise or foolish. It is clear to me that it was entitled to do what it did.

It is equally clear to me that the Court does not approve of the Legislature's decision and has decided simply to rewrite the statute. If that is not the Court's position, why does it not say so in response to this dissent? If it is the Court's position, why does it not adopt a more candid approach and · simply confront the Legislature, disregard the statute altogether, and boldly so in response to this dissent? If it is the Court's position, why does it not adopt a more candid approach and simply confront the Legislature, disregard the statute altogether, and boldly abolish governmental immunity completely? Why, instead, does the Court choose to accomplish the same end by using precedent as an excuse to reach a nonsensical result? The veil of that precedent is much too sheer to conceal

the visage of usurpation. Although the Court will not say so, the real issue for it, like Humpty Dumpty, is not word meanings, but power:

> "When *I* use a word," Humpty Dumpty said, in rather a scornful tone, "it means just what I choose it to mean—neither more nor less."
>
> "The question is," said Alice, "whether you *can* make words mean so many different things."
>
> "The question is," said Humpty Dumpty, "which is to be master—that's all."

Lewis Carroll, *Through the Looking–Glass*, ch. VI, at 163 (W.W. Norton & Co. 1971).[4] Because I cannot join in such a trespass upon the legislative province, I dissent.

PHILLIPS, C.J., and COOK, J., join.

COOK, Justice, dissenting.

I join in the dissenting opinion written by my colleague, Justice Hecht. However, I feel I must also write independently in order that the people of Texas more fully understand what the majority of the court is doing. Under the Constitution of the State of Texas the legislature has the exclusive power to enact laws. The role of the Supreme Court of Texas is to interpret them. The law has to be more than naked power. However, the majority of the court is using the "power to interpret the law" as a method to in fact make the law. If our constitutional form of government is to mean anything then the separation of powers should be respected.

The majority in this case has totally ignored the clear intent of the statute and has significantly weakened governmental immunity in Texas. Life is not death, black is not white, and, under the statute, use is not non-use. I therefore vigorously dissent.

---

[4] The Court protests that it more resembles Alice than Humpty Dumpty, that it is simply waiting upon the Legislature for guidance. Despite such protestations, its voice is not Alice's, whose reply to Humpty Dumpty's absurdities is equally apropos of the Court's defining "use" to include "non-use": " 'That's a great deal to make one word 'mean.' " Lewis Carroll, *Through the Looking–Glass*, ch. IV, at 164 (W.W. Norton & Co.1971).