**Michelle MICHAEL, Individually and as Next Friend of Vanessa Michael and Natasha Michael, Minor Children, Appellant,**

v.

**TRAVIS COUNTY HOUSING AUTHORITY, Appellee.**

No. 03–98–00507–CV.

Court of Appeals of Texas, Austin.

June 30, 1999.

Carter C. White, Law Office of Joe Richard Flores, P.C., Austin, for Appellant.

Jesse L. Whittenton, Walker, Bright & Whittenton, P.C., Austin, for Appellee.

Before Justices JONES, B.A. SMITH and YEAKEL.

J. WOODFIN JONES, Justice.

Appellant Michelle Michael, individually and on behalf of her minor children, Vanessa Michael and Natasha Michael, sued the Travis County Housing Authority for personal injuries based on alternative theories of strict liability, negligence, and premises liability. Asserting sovereign immunity, the Housing Authority filed a motion to dismiss for lack of jurisdiction, which the trial court granted. On appeal, Michael asserts that the trial court misconstrued the Tort Claims Act's waiver of sovereign immunity for injuries caused by a condition or use of personal or real property. *See* Tex. Civ. Prac. & Rem.Code Ann. § 101.021(2) (West 1997). We will reverse the trial court's judgment and remand the cause.

## FACTUAL AND PROCEDURAL BACKGROUND

We determine the trial court's jurisdiction from the good-faith factual allegations made by the plaintiff. *See Brannon v. Pacific Employers Ins. Co.*, 148 Tex. 289, 224 S.W.2d 466, 469 (1949); *Flowers v. Lavaca County Appraisal Dist.*, 766 S.W.2d 825, 827 (Tex.App.—Corpus Christi 1989, writ denied). Unless the defendant pleads and proves that such allegations were fraudulently made to confer jurisdiction, they are accepted as true. *See Flowers*, 766 S.W.2d at 827; *Delk v. City of Dallas*, 560 S.W.2d 519, 520 (Tex.

Civ.App.—Texarkana 1977, no writ); *Gordon v. Carver*, 409 S.W.2d 878, 879 (Tex. Civ.App.—Amarillo 1966, no writ); *see also Continental Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 449 (Tex.1996). Because the Housing Authority has not asserted any such fraudulent pleading here, we accept Michael's allegations as true; our recitation of the facts is taken from her pleadings.

On or about April 27, 1995, eight-year-old Vanessa Michael and her sister Natasha were roller-bladeing near their home in Travis County when Vanessa was attacked by two "pit bull" dogs. Vanessa suffered serious physical and emotional injuries. Natasha, who witnessed the attack, and Vanessa's mother, Michelle Michael, who witnessed its immediate aftermath, are also alleged to have suffered severe emotional distress.

The owners of the dogs live in a dwelling owned and maintained by the Housing Authority at the time of the incident. The dogs were enclosed in the yard of this residence by a fence, but the fence had holes in it. It was this defect that allowed the dogs to escape and attack Vanessa on the nearby sidewalk.

Michelle Michael sued both the dogs' owners and the Housing Authority for the personal injuries she and her daughters sustained. The Housing Authority moved for dismissal of the claim against it for lack of subject matter jurisdiction on the ground that the Housing Authority is immune from liability as a governmental unit. Plaintiff responded that her claims fall within the Texas Tort Claims Act's statutory waiver of sovereign immunity for personal injury "*caused by a condition or use of tangible personal or real property* if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." Civ. Prac. & Rem.Code § 101.021(2) (emphasis added). In particular, plaintiff claimed that the attack and resulting injuries were caused by the Housing Authority's failure to properly in-

spect and maintain the fence—a condition or use of tangible personal property.

According to Michael's pleadings, the Housing Authority was responsible for maintaining the fence and had previously conducted an inspection of the premises that either revealed or should have revealed its defective condition. Michael's pleadings also alleged that the Housing Authority knew or should have known about the presence of the dogs and about their dangerous tendencies. Despite the nature of the pit bulls and the broken fence, there were no signs posted to warn others of the risk of danger.

The trial court dismissed the suit against the Housing Authority for want of jurisdiction and severed Michael's claim against the Housing Authority from that against the dogs' owners. Michael perfected this appeal from the order of dismissal.

## DISCUSSION

■ In a single point of error, Michael asserts that the trial court's dismissal was erroneous because the suit falls within the section 101.021(2) waiver of immunity and therefore is not barred by the doctrine of sovereign immunity.

■ A plea to the jurisdiction challenges the trial court's authority over the subject matter of the controversy. *Schulz v. Schulz*, 726 S.W.2d 256, 257 (Tex.App.—Austin 1987, no writ). The plaintiff bears the burden of alleging facts that affirmatively demonstrate that the trial court has subject matter jurisdiction. *Texas Ass'n of Business v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1993). Whether a trial court has subject matter jurisdiction is a question of law, requiring a *de novo* review. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex.1998), *pet. for cert. filed*, —— U.S. ——, 119 S.Ct. 2018, 143 L.Ed.2d 1030, (1998).

■ A housing authority is a unit of government for all purposes, including the application of the Tort Claims Act. *See* Tex. Loc. Gov't Code Ann. § 392.006

(West 1999). In Texas, a governmental unit is immune from tort liability unless the legislature has waived immunity. *See Harris County v. Dillard*, 883 S.W.2d 166, 168 (Tex.1994). Such exceptions to sovereign immunity are generally dependent entirely on statute. *See Dallas County Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 341 (Tex.), *cert. denied*, —— U.S. ——, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998). The Tort Claims Act provides a waiver of immunity for personal injuries "caused by a condition or use of tangible personal or real property." Civ. Prac. & Rem.Code § 101.021(2). This waiver is to be liberally construed in order to effectuate the purposes of the Texas Tort Claims Act. *Robinson v. Central Tex. MHMR Ctr.*, 780 S.W.2d 169, 170 (Tex. 1989). The Texas Supreme Court has stated that in order to fulfill the requirement of liberal construction, we must be careful not to place such a restrictive interpretation on section 101.021(2) that we require more than what is expressed or implied in the language of the Act. *See Salcedo v. El Paso Hosp. Dist.*, 659 S.W.2d 30, 32 (Tex.1983) (allegation of defective tangible property is not necessary if use, rather than condition, of property is alleged to be "a contributing factor to the injury"). But we must balance this liberal construction with the legislative intent of a limited, rather than unlimited, waiver of sovereign immunity. *Bossley*, 968 S.W.2d at 341.

The supreme court has consistently construed the causation requirement in section 101.021(2) to be one of *proximate* cause, not a different standard such as immediate cause, direct cause, or sole cause:

Each unit of government in the state shall be liable for money damages for death or personal injuries *so caused* (i.e., when *proximately caused* by the negligence or wrongful act or omission of any officer or employee acting within the scope of his employment or office) from some condition or some use of tangible

property under circumstances where there would be private liability.

*Lowe v. Texas Tech Univ.,* 540 S.W.2d 297, 299 (Tex.1976) (emphasis of "proximately caused" added); *accord Bossley,* 968 S.W.2d at 342 ("Section 101.021(2) requires that for immunity to be waived, personal injury or death must be proximately caused by the condition or use of tangible property."); *Salcedo,* 659 S.W.2d at 32 ("the proximate cause of the damages for death or personal injury ... must involve 'some condition or some use' of tangible property....").

The proper *scope* of the proximate cause standard has been a subject of debate since *Lowe.* In *Salcedo* the supreme court stated that, to satisfy the Tort Claims Act, the negligent conduct "must *involve* 'some condition or some use' of tangible property." 659 S.W.2d at 33 (emphasis added). In *Bossley* the court clarified that statement by explaining that "involvement" of property is a *necessary,* but not *sufficient,* test for waiver of immunity. *See Bossley,* 968 S.W.2d at 342.

■■■ Relying on the decision in *Bossley,* the Housing Authority contends immunity is not waived in the present case, urging that the injury was caused by the dogs, not the fence, and therefore it cannot be said that a condition or use of property proximately caused the injury. In effect, the Housing Authority construes *Bossley* to require that any property causing injury must be the device that directly inflicts the injury. We do not interpret *Bossley* to require such direct contact, as long as there is a reasonably close causal relation between the property and the resulting injury. *See id.* at 343 (distinguishing *Overton Memorial Hospital v. McGuire,* 518 S.W.2d 528, 529 (Tex.1975), in which sovereign immunity was held to be waived for injuries caused by patient falling out of hospital bed that was not equipped with side rails, on ground that injury in *McGuire* was "immediate and directly related" to hospital bed).

In a plurality decision, the supreme court in *Texas Department of Mental Health & Mental Retardation v. Petty ex rel. Kauffman,* 848 S.W.2d 680 (Tex.1992), explicitly rejected the State's argument that there could be no waiver of immunity for a patient's death due to misuse of medical tests and records unless "a large stack of them had fallen on her head." *Id.* at 682. In finding a section 101.021(2) waiver of immunity, *Petty* noted that in *Salcedo,* where a waiver of immunity was found when a hospital's misreading of an electrocardiogram graph led to a patient's death, the plaintiff was not required to prove direct injury from the graph itself, but from the diagnosis contained in the record. *Id. Petty* also cited an appellate court's decision in *Huckabay v. Irving Hospital Foundation,* 802 S.W.2d 758 (Tex.App.—Dallas 1990, writ denied), which similarly rejected an argument that an X-ray machine must cause an injury directly rather than through its use and noted that such constrained interpretations of section 102.021(2) are in direct contradiction with the unanimous opinion of the court in *Salcedo* and of the ensuing *Robinson* opinion as well. *Petty,* 848 S.W.2d at 682.

The supreme court's most recent pronouncements on the subject are in *Bossley.* There, a suicidal patient escaped from a mental health treatment facility by passing through an unlocked inner door and then pushing aside an attendant who had just opened a secure outer door. Facility staff members chased the patient for half a mile before they caught up with him near an interstate freeway. The patient attempted to hitchhike a ride, first from one side of the freeway and then from the other, before the staff members and police were able to approach him. When his apprehension was imminent, the patient committed suicide by leaping in front of a passing truck. The court found that this sequence of events made the patient's death "too attenuated" from the use and condition of the inner door to satisfy the requirement of proximate cause. *See Bossley,* 968 S.W.2d at 343.

In contrast to *Bossley*, the facts alleged in the present case show an immediate attack by two pit bulls that escaped through a defective fence, the only barrier protecting passers-by from the vicious dogs. The attack occurred on a nearby sidewalk in close proximity to the fence. Thus, the record here does not show the type or degree of intervening causes, nor the attenuation and remoteness of causation, found in *Bossley*. Other than the broken fence, there were no unusual obstacles for the dogs to overcome in order to attack Vanessa. Unlike the injury in *Bossley*, the injury here was not "distant geographically, temporally, and causally." *See Bossley*, 968 S.W.2d at 343. Under the present facts, therefore, we conclude that *Bossley* does not preclude a waiver of sovereign immunity.

The supreme court also noted in *Bossley* that sovereign immunity is waived under section 101.021(2) when a governmental unit provides property that lacks "an integral safety component" that leads to personal injuries. *Id.* (citing *Kerrville State Hospital v. Clark*, 923 S.W.2d 582 (Tex. 1996)). On several occasions, the court has construed section 101.021(2) to provide a waiver of immunity for injuries caused by safety-defective property. *See, e.g., McGuire*, 518 S.W.2d 528 (no immunity for hospital which provided bed without side rails, leading to patient falling out of bed); *Robinson*, 780 S.W.2d 169 (no immunity for mental health facility that failed to provide life preserver for epileptic patient who subsequently drowned while swimming); *Lowe*, 540 S.W.2d 297 (no immunity for university that failed to provide proper safety equipment to football player, which led to knee injury). As in those situations, the present case could be construed to involve tangible property that lacked an integral safety component: a fence meant to protect passers-by from vicious dogs, but which, because of defects, failed to serve its basic purpose.

■ Although *Bossley* cautioned that "[p]roperty does not cause injury if it does no more than furnish the condition that makes the injury possible," we do not construe this minimum standard to bar a waiver of immunity here. *See Bossley*, 968 S.W.2d at 343. The court in *Bossley* referenced *Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 776 (Tex.1995), as the source of this standard, which in turn cited *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470 (Tex. 1991). In both of these cases, the court declined to find proximate cause because the causal relation between the property and the injury was too attenuated. In *Lear Siegler*, an employee of the Texas Highway Department was pulling a flashing warning sign behind a highway maintenance vehicle to warn other vehicles of the maintenance operation. When the flashing sign malfunctioned, the employee got out of his truck to reconnect some loosened wires. As he did so, the sleeping driver of an oncoming vehicle struck the sign, which in turn struck the employee. The malfunctioning flashing light was found too remote from the plaintiff's subsequent injuries. In *Union Pump*, an employee of a chemical plant suffered injury when the employee attempted to block off a nitrogen valve after quenching a plant fire caused by a pump manufactured by Union Pump. After containing the fire, two employees of the chemical plant made their way to a nitrogen valve in order to block it off. When they returned from the valve location along one of several alternate paths, one of the employees slipped and fell off a pipe rack that was allegedly wet from fire-extinguishing liquids. Again, the court found that the plaintiff's injuries were too attenuated from the property (the pump). Moreover, in each of these cases there were other events that transpired between the alleged cause and the injury, making the causal nexus too remote.

In the present case, the broken fence did more than merely furnish the condition that made the injury possible in the manner of *Union Pump*, *Lear Siegler*, or *Bossley*. Providing a fence with holes in it to enclose dogs with vicious tendencies is more comparable to providing a hospital bed without side rails or allowing an epi-

leptic patient to swim without a life preserver than to the attenuated circumstances of the referenced trio of cases.

We recognize that an arguably contrary result was recently reached in *San Antonio State Hospital v. Koehler*, 981 S.W.2d 32 (Tex.App.—San Antonio 1998, pet. denied), in which a state hospital was found not to be within the waiver of section 101.021(2) where a fence enclosing the hospital grounds had gaps in it that permitted a mental patient's escape. The patient escaped the hospital grounds, accompanied by a male acquaintance, through a hole in the fence surrounding the property. The patient left voluntarily with her male companion to a boarding house, where he raped her. This intervening criminal act of a third party further attenuated the causal nexus between the property and the injury. Indeed, the court in *Koehler* acknowledged that the injury there was even further removed from the property's condition than in *Bossley*. *Id.* at 36. We believe the injury suffered by the plaintiff in *Koehler* is substantially more remote geographically, temporally, and causally than that sustained by Vanessa in the pit bull attack here.

Moreover, one of the *Koehler* court's conclusions appears to be an unwarranted expansion of the *Bossley* holdings. *Koehler* interpreted *Bossley* to require that a premise condition "must actually be the instrumentality that causes the plaintiff's harm." *Koehler*, 981 S.W.2d at 37. We fail to find such a sweeping conclusion in *Bossley*, which required only that property must do "more than furnish the condition that makes injury possible" for a waiver of sovereign immunity. *See Bossley*, 968 S.W.2d at 343. Beyond finding the circumstances surrounding the patient's injuries too attenuated geographically, temporally, and causally from the use of the doors, *Bossley* did not adopt the extreme standard that the *Koehler* court perceives. In the present context, therefore, we do not find *Koehler* persuasive.

## CONCLUSION

Because we conclude that the facts of the present case satisfy the requirements for causation within section 102.021(2), we reverse the trial court's dismissal and remand the cause to that court for further proceedings.