**TEXAS NATURAL RESOURCE AND CONSERVATION COMMISSION, Appellant,**

v.

**Tammy WHITE f/k/a Tammy Hand, Appellee.**

**No. 2–99–281–CV.**

Court of Appeals of Texas, Fort Worth.

Feb. 24, 2000.

Locke, Liddell & Sapp, L.L.P., John Humphrey Marks, Jan Soifer and Charles W. Rhodes, Dallas, for Appellant.

The Law Offices of James K. Laroe, P.C., and Craig S. Douglas, Dallas, Stephens & Meyers, L.L.P., and Kerwin B. Stephens, Graham, for Appellee.

PANEL B: DAY, LIVINGSTON, and RICHARDS, JJ.

## OPINION

TERRIE LIVINGSTON, Justice.

### INTRODUCTION

Appellant, Texas Natural Resource and Conservation Commission (TNRCC), a state agency, appeals the trial court's denial of its motion to dismiss for want of jurisdiction based upon sovereign immunity. Because we find appellee has alleged sufficient facts in her original petition to raise the issue of waiver pursuant to Texas Tort Claims Act (TTCA) section 101.021(1)(A), we affirm the trial court's denial of TNRCC's motion.

### STANDARD OF REVIEW

■ In its first issue, TNRCC argues that governmental immunity from suit—as opposed to immunity from liability—is a jurisdictional defense. At oral argument, appellee Tammy White conceded this issue and we agree that this is an accurate statement of the law. Governmental immunity from suit defeats a trial court's subject matter jurisdiction and thus is properly asserted in a plea to the jurisdiction. *See Texas Dep't of Transp. v. Jones,* 8 S.W.3d 636, 638–39 (1999); *City of San Augustine v. Parrish,* 10 S.W.3d 734, 738 (Tex.App.—Tyler 1999, no pet. h.); *City of Houston v. Morua,* 982 S.W.2d 126, 127 (Tex.App.—Houston [1st Dist.] 1998, no pet.). Because we sustain TNRCC's first issue, we reach the merits of its second.

■ In its only other issue, TNRCC contends that White failed to allege sufficient facts in her petition to establish legislative consent for her suit. The plaintiff has the burden to allege facts that affirmatively demonstrate the lack of governmental immunity and, hence, the court's jurisdiction to hear the cause. *See Texas Ass'n of Bus. v. Texas Air Control Bd.,* 852 S.W.2d 440, 446 (Tex.1993).

■ Whether a trial court has subject matter jurisdiction is a question of law subject to de novo review. *See Bush v. Texas Dep't of Protective & Regulatory Servs.,* 983 S.W.2d 366, 368 (Tex.App.—Fort Worth 1998, pet. denied) (citing *Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex.1998), *cert. denied,* 526 U.S. 1144, 119 S.Ct. 2018, 143 L.Ed.2d 1030 (1999)). When reviewing a trial court order dismissing a cause for want of jurisdiction, Texas appellate courts construe the pleadings in favor of the plaintiff and look to the pleader's intent. *See Texas Ass'n of Bus.,* 852 S.W.2d at 446. The same standard applies when, as here, we review an interlocutory appeal of a trial court's denial of a motion to dismiss for lack of subject matter jurisdiction. *See Morua,* 982 S.W.2d at 127. The court must look solely to the allegations in the plaintiff's petition, and must assume those allegations are correct. *See Green Int'l, Inc. v. State,* 877 S.W.2d 428, 431 n. 3 (Tex.App.—Austin 1994, writ dism'd); *Liberty Mut. Ins. Co.*

*v. Sharp*, 874 S.W.2d 736, 739 (Tex.App.—Austin 1994, writ denied) (citing *Texas Ass'n of Bus.*, 852 S.W.2d at 446). Thus, if the plaintiff alleges sufficient facts in its petition to establish a waiver of immunity, dismissal for want of jurisdiction is inappropriate. Of course, the government may always reassert its immunity defense if and when discovery or other evidence later demonstrates that under the specific facts of the case, immunity has not been waived. *See Methodist Hosps. v. Texas Workers' Compensation Comm'n*, 874 S.W.2d 144, 149 (Tex.App.—Austin 1994, no writ) (lack of trial court jurisdiction may be raised at any time, even on appeal, by the parties or by the court itself). We thus present the facts as pled in White's petition.

## BACKGROUND FACTS

White owned and operated a business adjacent to Asa Smith's land in Graham, Texas. At some point, gasoline storage tanks located beneath Smith's property began to leak, and as a result gas fumes migrated onto White's property. After White complained to authorities about the fumes, TNRCC came onto appellee's land and, in an effort to remedy the situation, dug a trench and installed a motor-driven pump system to remove and dissipate the vapors. Two weeks later, however, TNRCC disengaged and removed the pump system. Six days later, the fumes migrated onto White's property, pooled in the corner of her store, ignited, and caused a fire that destroyed the building.[1]

## DISCUSSION

### Judicial Construction of the TTCA

In 1976, the Texas Supreme Court held that "the statute calls for liberal construc-

tion to effectuate its purposes." *Lowe v. Texas Tech Univ.*, 540 S.W.2d 297, 298 (Tex.1976). Indeed, the original version of the TTCA contained a provision calling for the liberal construction of its provisions to achieve the purposes of the act. *See* Texas Tort Claims Act, 61st Leg., R.S., ch. 292, § 13, 1969 Tex. Gen. Laws 874, 877, *repealed by*, Act of May 2, 1985, 69th Leg., R.S., ch. 479, § 1, 1983 Tex. Gen. Laws 1652. Unfortunately, without clear legislative explanation of the purposes of the act, such a call is inherently ambiguous. It is unclear whether the legislature intended the *waiver* provisions to be liberally construed, or whether *governmental immunity* should be liberally construed through narrow interpretation of the waiver provisions.[2] The Texas Supreme Court is not unaware of this problem.

In *Lowe*, Chief Justice Greenhill wrote a concurrence "encourag[ing] the Legislature to take another look at the Tort Claims Act, and to express more clearly its intent as to when it directs that governmental immunity is waived." *Lowe*, 540 S.W.2d. at 301 (Greenhill, C.J., concurring). In 1983, the court had occasion to remark that "[s]even years have passed since our opinion in *Lowe*, yet the legislature has not changed the troublesome waiver provision. Thus, the statute has remained susceptible to broad or narrow interpretations." *Salcedo v. El Paso Hosp. Dist.*, 659 S.W.2d 30, 32 (Tex.1983). *Salcedo* then followed *Lowe*, refusing to give the waiver provisions of the act a restrictive interpretation. *Id.*

Both of these cases were decided before the act was codified into the civil practice

---

1. Trinity Universal Insurance Companies (Trinity) filed suit in the name of its insured, White, against TNRCC and others to recover the $352,210 it paid to White for damages caused by the fire. Subsequently, White filed a plea in intervention, adopting and incorporating the allegations of Trinity as to the liability of TNRCC, but seeking additional damages allegedly sustained in the fire that were not paid by Trinity.

2. We note that although the government code now contains general provisions calling for the liberal construction of statutes, that provision is no less vulnerable to these ambiguities. *See* Tex. Gov't Code Ann. § 312.006(a) (Vernon 1998).

and remedies code. However, even after codification, the confusion and ambiguity remained unresolved. *See Robinson v. Central Tex. MHMR Ctr.,* 780 S.W.2d 169, 170–71 (Tex.1989) ("Regrettably, seven legislative sessions have come and gone since Chief Justice Greenhill's request for clarification in *Lowe.* ... We once again call on the legislature to clarify, as soon as possible, the extent to which it intended to waive governmental immunity."). *Robinson* then invoked the rule that "when a statute is re-enacted without material change, it is presumed that the legislature knew and adopted the interpretation placed on the original act and intended the new enactment to receive the same construction." *Id.* (quoting *Coastal Indus. Water Auth. v. Trinity Portland Cement Div.,* 563 S.W.2d 916, 918 (Tex.1978)). Accordingly, *Robinson* again construed the subsection at issue as a broad waiver of immunity.

In 1994, without discussing *Robinson* or its recital of the presumption that legislative silence reflects an endorsement of judicial interpretations, the court revisited the 1985 amendment and codification of the act. *See University of Texas Med. Branch v. York,* 871 S.W.2d 175, 177 & n. 3 (Tex.1994). The court noted that the prior version of the TTCA itself provided that its provisions "shall be liberally construed to achieve the purposes hereof." *Id.* at 177 n. 3. When the statute was codified in 1985, however, the call to liberally construe its provisions was deleted. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 101.001–.066 (Vernon 1997 & Supp.2000).

In *York,* the court concluded that by removing this provision, the legislature subjected the act to the general principles of statutory construction, allowing courts to take into account (among other things) legislative history and the objectives sought to be obtained by the statute. *York,* 871 S.W.2d at 177 (citing TEX. GOV'T CODE ANN. § 311.023 (Vernon 1988)). Unfortunately, the TTCA's legislative history and objectives are *precisely* what the prior

decisions had found to be ambiguous and susceptible of either broad or narrow interpretation. We note that despite its comments, *York* neither attempted to discern the objectives of the act, nor in fact advocated a narrow construction of the act. *Id.* at 177–78. However, the court concluded that immunity had not been waived in that case. *See id.* at 179.

Finally, in 1998, the supreme court cited Chief Justice Greenhill's concurrence in *Lowe* for the proposition that the "Act's basic purpose [is to] waiv[e] immunity only to a limited degree." *Dallas County Mental Health & Mental Retardation v. Bossley,* 968 S.W.2d 339, 343 (Tex.) (citing *Lowe,* 540 S.W.2d at 302–03 (Greenhill, C.J., concurring)), *cert. denied,* 525 U.S. 1017, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998). Even though the court did not expressly adopt a narrow construction of the waiver provisions, it again found under the facts of its case that immunity had not been waived. *See id.* at 344.

In light of this conflicting case history, we take some comfort in the fact that we are not alone in our confusion. The Austin Court of Appeals recently suggested a compromise approach that we now adopt until instructed otherwise by either the supreme court or the legislature. *See Michael v. Travis County Hous. Auth.,* 995 S.W.2d 909, 912 (Tex.App.—Austin 1999, no pet.). That court stated:

> [Waiver under the TTCA] is to be liberally construed in order to effectuate the purposes of the Texas Tort Claims Act. *Robinson v. Central Tex. MHMR Ctr.,* 780 S.W.2d 169, 170 (Tex.1989). The Texas Supreme Court has stated that in order to fulfill the requirement of liberal construction, we must be careful not to place such a restrictive interpretation ... that we require more than what is expressed or implied in the language of the Act. *See Salcedo v. El Paso Hosp. Dist.,* 659 S.W.2d 30, 32 (Tex. 1983) [parenthetical omitted]. But we must balance this liberal construction with the legislative intent of a limited,

rather than unlimited, waiver of sovereign immunity. *Bossley*, 968 S.W.2d at 341.

*Id.* Hence, we will interpret the TTCA waiver provisions broadly, but within reason and while keeping in mind that the legislature did not intend a general waiver of governmental immunity.

### TTCA § 101.021(1)(A)

█ The doctrine of sovereign immunity, unless waived, protects the State of Texas, its agencies and its officials, from lawsuits for damages, absent the State's consent to be sued. *See Umar v. Scott*, 991 S.W.2d 512, 518 (Tex.App.—Fort Worth 1999, no pet.). Hence, as a state agency, TNRCC is generally protected from suit. However, the TTCA waives immunity for property damage caused by a state agency's use or operation of motor-driven equipment. Specifically, subsection 101.021(1)(A) states in relevant part:

A governmental unit in the state is liable for:

> (1) property damage ... proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
>
>> (A) the property damage ... arises from the operation or use of a motor-driven vehicle or motor-driven equipment....

TEX. CIV. PRAC. & REM.CODE ANN. § 101.021(1)(A) (Vernon 1997).

In addition to the facts stated above, White alleged the following:

Defendant TNRCC may be held to answer in a court of law for the incident made the basis of this lawsuit because Plaintiff [WHITE] suffered property damage proximately caused by the wrongful acts, omissions and/or negligence of TNRCC employees and which arose from the operation or use of motor-driven equipment....

....

As a direct and proximate result of the acts and/or omissions of Defendants ... TNRCC as described herein, [WHITE] sustained damages in an amount in excess of the minimum jurisdiction of this Court. These damages include, but are not limited to, [WHITE's] ... property ... damages.

....

Defendant TNRCC was negligent and proximately caused Plaintiff [WHITE's] damages.... TNRCC's negligent acts and/or omissions include but are not limited to the following: (1) improperly digging the trench; (2) improperly installing the motor-driven pump system; (3) improperly working or operating the motor-driven pump system; (4) removing the motor-driven pump system; and (5) its heedless and reckless disregard for the safety of [WHITE].

TNRCC argues that these facts and allegations fail to establish that (1) the pump installed by TNRCC was "motor-driven equipment" under the statute, (2) TNRCC's use of the equipment caused White's property damage, and (3) TNRCC's removal of the equipment constituted "operation or use" of that equipment under the statute. We address each of these arguments in turn.

### 1. "Motor–Driven Equipment"

█ TNRCC first argues that White did not sufficiently allege that TNRCC's pumps were "motor-driven equipment" as that term has been interpreted by the courts. Again, the statute lends little assistance. The term "motor-driven equipment" is not defined by the act, but does *not* include either "(A) equipment used in connection with the operation of floodgates or water release equipment by river authorities created under the laws of this state; or (B) medical equipment, such as iron lungs, located in hospitals." TEX. CIV. PRAC. & REM.CODE ANN. § 101.001(4) (Vernon Supp.2000). Because the only two items expressly excepted (flood gates and hospital medical equipment) are so specific, the category itself must be understood to be fairly broad. *See 4 DG's Corp. v.*

*City of Lockney,* 853 S.W.2d 855, 857 (Tex. App.—Amarillo 1993, no writ) (the term "equipment" is elastic and includes sewer water pumps).

What is or is not "motor-driven equipment" is a question of fact for the trier of fact; we are required only as a matter of law to determine whether the plaintiff has alleged facts that claim an injury was caused by motor-driven equipment. At this early stage of the proceedings, we are reluctant to hold White accountable for knowing precisely what sort of equipment TNRCC used at the time. Considering the elastic definition of "equipment," and the early stage of the proceeding, we conclude that White has alleged sufficient facts to establish that TNRCC's pump was "motor-driven equipment" as that term is used in the act. If after discovery the fact-finder determines that the pump was not motor-driven equipment, TNRCC would be able to reassert its immunity defense on that basis and at that time.[3]

## 2. Causation

TNRCC also argues that White has not sufficiently alleged that her property damage "arose from" TNRCC's use of the equipment. We disagree. Construing the petition in favor of White and looking to her intent, we understand her to have alleged that TNRCC came onto her property in an effort to eliminate gas fumes and for that purpose dug a trench, installed a pump, operated that pump, and then removed that pump all without regard to her safety. White further alleges that one or more of these affirmative acts by TNRCC directly or proximately caused the damage to her property. These allegations are sufficient to satisfy the causation requirement of the TTCA; again, it is unclear what additional facts White should be required to possess before discovery has begun.

TNRCC raises two arguments against this conclusion. First, it contends that, as a matter of law, White's damages, arising six days after TNRCC's removal of the pump, occurred too remotely to establish proximate cause. Proximate cause consists of cause in fact and foreseeability. *See Leitch v. Hornsby,* 935 S.W.2d 114, 118 (Tex.1996). The test for cause in fact is whether the negligent act or omission was a substantial factor in bringing about the injury, without which the harm would not have occurred. *See Prudential Ins. Co. of America v. Jefferson Assocs., Ltd.,* 896 S.W.2d 156, 161 (Tex.1995). "Foreseeability requires only that the general danger, not the exact sequence of events that produced the harm, be foreseeable." *Walker v. Harris,* 924 S.W.2d 375, 377 (Tex.1996). The danger of injury is foreseeable if its "general character ... might reasonably have been anticipated." *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 551 (Tex.1985) (emphasis omitted). However, "there are certain situations in which the happenstance of place and time is too attenuated from the defendant's conduct for liability to be imposed." *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 472 (Tex.1991).

White alleges that TNRCC installed its pump in the attempt to remove the gasoline vapors that had migrated onto White's property. When TNRCC thereafter removed the pump, certainly the gen-

---

3. TNRCC cites to a 1992 case holding that water pumps are not "motor-driven equipment" under the act. *See Schaefer v. City of San Antonio,* 838 S.W.2d 688, 693 (Tex. App.—San Antonio 1992, no writ). First, like the *4 DG's* court, we read *Schaefer's* conclusion that the water pump was not "motor-driven equipment" to be unnecessary for its preceding conclusion that the government was not "operating or using" the equipment; therefore, the conclusion concerning the equipment reasonably may be said to be dictum. *See 4 DG's,* 853 S.W.2d at 857. Second, and perhaps more importantly, we note that the *Schaefer* court considered the question after a completed bench trial. Because of the different procedural posture of our case, and because we understand *Schaefer's* conclusion to be dictum, we distinguish that case from our own.

eral character of the damage (namely, a gas explosion) "might reasonably have been anticipated." *Nixon,* 690 S.W.2d at 551 (emphasis omitted). And while we acknowledge that a six-day interval between the alleged negligence and the injury might be too attenuated to prove proximate cause, we refuse to find as a matter of law that such period will *always* prove too long. Should a mechanic, for example, negligently fail to tighten a bolt on a piece of machinery that, after six days of normal use, disengages and causes injury, the plaintiff's cause could not be dismissed merely on the basis of the six-day interval. TNRCC has not filed a motion for summary judgment, but a plea to the jurisdiction;[4] hence, the only question before us is whether White sufficiently alleged facts establishing a waiver of immunity. *See Texas Ass'n of Bus.,* 852 S.W.2d at 446. We hold that a six-day lag is not by itself and as a matter of law an absolute bar to suit, especially when the location of the injury is not attenuated and the resulting harm was foreseeable at the time of the alleged negligence.

Second, TNRCC cites and attempts to analogize from case law holding that property does not "cause" injury if it does no more than furnish the condition that makes the injury possible. *See, e.g., Bossley,* 968 S.W.2d at 343. However, there may well be a limit to this proposition. The Austin Court of Appeals, interpreting the related TTCA section 101.021(2), recently rejected the proposition that *Bossley* requires the government property to directly inflict the injury. *See Michael,* 995 S.W.2d at 913. "We do not interpret *Bossley* to require such direct contact, as long as there is a reasonably close causal relation between the property and the resulting injury." *Id.* (citing *Overton Mem'l Hosp. v. McGuire,* 518 S.W.2d 528, 529 (Tex.1975) (immunity waived where patient's injury was "immediate[ly] and di-

rectly related" to the absence of side rails)).

Even the supreme court—albeit in a plurality opinion—acknowledged this limitation, rejecting the State's argument that there could be no waiver of immunity for a patient's death due to misuse of medical tests and records unless "a large stack of them had fallen on her head." *Department of Mental Health & Mental Retardation v. Petty ex rel. Kauffman,* 848 S.W.2d 680, 682 (Tex.1992). Hence, strict and direct causal connection is not necessarily required.

Whether or not *Michael* and *Petty* correctly limit *Bossley,* we note that none of the cases cited by TNRCC involves a plea to the jurisdiction. Again, the procedural posture of this case is significant. Of course, White will have the burden to prove at trial that TNRCC's operations or omissions did in fact cause gas vapors to migrate onto her land and ignite. If discovery reveals that TNRCC's use of property merely furnished the condition leading to White's damages, then TNRCC may be entitled to assert its immunity defense.

At this stage in the proceeding, however, and based upon White's pleadings, such assertion is premature. White has alleged sufficient facts to raise the inference that TNRCC took affirmative acts giving rise to the duty not to negligently remove its pump. If discovery reveals that TNRCC affirmatively took control of and instigated the remedial measures on White's land, then by statute TNRCC assumed responsibility for its actions and its omissions. *See* TTCA § 101.021(1)(A). Thus, White has sufficiently alleged that TNRCC's acts constituted more than the mere furnishing of a condition. We cannot say that White failed to plead causation to secure jurisdiction.

---

4. Only Terranext, Inc., S.P. Environmental Systems, B.E. & K. Terranext, L.L.C., and Industrial Compliance, Inc. filed a motion for summary judgment.

### 3. "Operation and Use"

TNRCC next argues that its *removal* of the pump cannot amount to "operating or using" the pump as required by the TTCA. Such removal, says TNRCC, is more akin to "non-use" or "failure to use" which is insufficient to warrant a claim against the government. *See Kassen v. Hatley,* 887 S.W.2d 4, 14 (Tex.1994). We disagree that White has merely alleged non-use.

In her petition, White alleges that TNRCC dug a ditch and installed the pump on her property, improperly worked or operated the pump, and as a result of these affirmative acts, White suffered injury. Such factual allegations assert more than mere non-use and are sufficient to preempt dismissal on a plea to the jurisdiction. *See Texas Ass'n of Bus.,* 852 S.W.2d at 446.

### CONCLUSION

We agree with TNRCC's first point that governmental immunity may properly be asserted in a plea to the jurisdiction. However, at this preliminary stage, before discovery has concluded, and under the appropriate standards for reviewing a trial court's denial of the State's assertion of immunity in a plea to the jurisdiction, we cannot say that White's pleadings are insufficient to state a cause of action or to raise the issue of waiver under the TTCA. We overrule TNRCC's second point and affirm the decision of the trial court.