

# NUMBER 13-21-00341-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

CITY OF CEDAR PARK,                                                **Appellant,**

**v.**

JUAN DELAPENA, INDIVIDUALLY
AND AS NEXT FRIEND OF C.D.L.P,
A MINOR; AND KORINA DELAPENA,
INDIVIDUALLY AND ON BEHALF OF
THE ESTATE OF C.D., A DECEASED MINOR,            **Appellees.**

### On appeal from the 201st District Court
### of Travis County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Contreras and Justices Benavides and Tijerina
### Memorandum Opinion by Justice Benavides

In this case involving the tragic drowning of a young child at a public pool, the City

of Cedar Park (City) appeals from the denial of its plea to the jurisdiction. In what we construe as a single issue, the City contends that the circumstances of this case fall outside the Texas Tort Claims Act's (TTCA) limited waiver of immunity.[1] We reverse and render a judgment of dismissal for want of jurisdiction.[2]

## I. BACKGROUND

On June 4, 2019, High Hopes Summer Camp took its campers to Buttercup Pool, which is owned and operated by the City. One of those campers was Catiana, a six-year-old girl with autism and Down Syndrome, who could not swim. Catiana's parents, appellees Juan and Korina Delapena, had multiple conversations with camp staff about Catiana's inability to swim. The staff assured them that Catiana would be taken care of and that there was no need for them to provide a life jacket for Catiana because one would be available at the pool.

Buttercup Pool's written safety policy requires camps to actively supervise campers with at least one camp counselor for every ten campers. Under the policy, if a camp does not have enough counselors present to satisfy this requirement, the camp should be denied entry to the pool. Some evidence in the record suggests that, on the day in question, High Hopes Summer Camp was admitted to the pool with only ten

---

[1] This appeal was transferred to us from the Third Court of Appeals in Austin pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. §§ 22.220(a) (delineating the jurisdiction of appellate courts), 73.001 (granting the supreme court the authority to transfer cases from one court of appeals to another at any time that there is "good cause" for the transfer).

[2] Although the law favors the City in this case, we caution City's counsel that ad hominem attacks on opposing counsel are neither welcome nor persuasive. *See* Antonin Scalia & Bryan A. Garner, *Making Your Case: The Art of Persuading Judges* 34–35 (2008).

counselors available to supervise 112 campers.[3]

According to an eyewitness, three lifeguards were on duty, and although there was a bin full of lifejackets available for campers to use, none of the campers were wearing lifejackets. According to one of the campers, Catiana entered the pool while camp staff had their backs turned to the campers. A lifeguard noticed Catiana in distress, but by the time Catiana was pulled from the water, she was unresponsive. Catiana died the next day.

The Delapenas originally filed a friendly suit against High Hopes Summer Camp. They subsequently amended their petition to bring survival and wrongful death claims against the City, as well as a bystander claim on behalf of Catiana's sister, who witnessed Catiana's drowning. They alleged the City was negligent in: (1) operating the pool without an adequate number of qualified lifeguards; (2) failing to provide Catiana with an available life jacket; and (3) negligently implementing the City's pool safety policy.

The City filed a plea to the jurisdiction arguing that the Delapenas failed to allege a valid waiver of immunity under the TTCA. The City also submitted jurisdictional evidence, including copies of the City's written rules and policies concerning the operation of Buttercup Pool and a document the City referred to as the "Cedar Park Aquatics Safety Plan," which is a report authored by a risk management consultant prior to the incident. The City also submitted evidence from the Cedar Park Police Department's investigation, including reports, diagrams, witness statements, and bodycam video taken by responding officers.

---

[3] Other evidence in the record suggests that there were twelve counselors present.

The Delapenas filed a response to the plea and submitted their own jurisdictional evidence, including a copy of a "Texas Health and Human Services Commission Child-Care Licensing Investigation Report." Citing multiple acts and omissions, the report concluded by a preponderance of the evidence that the camp's director breached the duty of care owed to Catiana and that his "negligence result[ed] in the death of [a] child in his care." In particular, the report found that the director placed camp counselors in positions where they could not monitor the shallow end of the pool. According to the report, the director then "released" some children, including Catiana, into the shallow end without life jackets, even though these children had not taken swim tests and the Delapenas had informed the camp that Catiana could not swim.

The trial court denied the plea to the jurisdiction, and this interlocutory appeal ensued. *See* TEX. CIV. PRAC. & REM. CODE. ANN. § 51.014(a)(8).

## II. STANDARD OF REVIEW & APPLICABLE LAW

Subject matter jurisdiction is essential to a court's authority to decide a case. *In re Abbott*, 601 S.W.3d 802, 807 (Tex. 2020) (original proceeding) (per curiam) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993)). Whether a trial court has subject matter jurisdiction is a question of law we review de novo. *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 384 (Tex. 2016).

Sovereign immunity is a common-law doctrine that protects the State and its agencies from lawsuits for money damages and deprives a trial court of subject matter jurisdiction over the plaintiff's claims. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 & n.2 (Tex. 2008). Governmental immunity offers the same protections

4

for the State's political subdivisions, including its cities. *Dohlen v. City of San Antonio*, 643 S.W.3d 387, 392 (Tex. 2022) (first citing *Hillman v. Nueces County*, 579 S.W.3d 354, 357 (Tex. 2019); and then citing *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003)). By design, immunity shields public treasuries from mistakes made by government officials and employees. *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006). "[I]mmunity thus protects the public as a whole by preventing potential disruptions of key government services that could occur when government funds are unexpectedly and substantially diverted by litigation." *Brown & Gay Eng'g, Inc. v. Olivares*, 461 S.W.3d 117, 121 (Tex. 2015).

On the other hand, protecting the public fisc is cold comfort for an injured person barred from the judicial remedies that would otherwise be available to them had the complained-of-acts been committed by a private person. *See id.*; *Bacon v. Tex. Hist. Comm'n*, 411 S.W.3d 161, 172 (Tex. App.—Austin 2013, no pet.) (noting that "sovereign immunity generally shields our state government's improvident acts—however improvident, harsh, unjust, or infuriatingly boneheaded these acts may seem" (internal quotation marks and citation omitted)). Consequently, courts "defer to the Legislature in waiving immunity because it is in a better position to weigh the conflicting public policy interests associated with subjecting the government to liability." *Dohlen*, 643 S.W.3d at 392 (citing *Wasson Ints., Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 432–33 (Tex. 2016)).

The TTCA provides a limited waiver of immunity for certain tort claims against governmental entities, including claims for "personal injury and death so caused by a

5

condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2). This waiver encompasses "two distinct tort causes of action: one arising from tangible personal property and one arising from a premises defect." *Sampson*, 500 S.W.3d at 385 (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 230 (Tex. 2004)). A plaintiff's claim must be one or the other, but it cannot be both. *Id.* (citing *Miranda*, 133 S.W.3d at 233).

It is the plaintiff's initial burden to plead facts that affirmatively demonstrate the trial court's subject matter jurisdiction, and we review this question as a matter of law. *City of Austin v. Leggett*, 257 S.W.3d 456, 461 (Tex. App.—Austin 2008, pet. denied) (citing *Miranda*, 133 S.W.3d at 226). We construe the pleadings liberally, accept the plaintiff's allegations as true, and look to the plaintiff's intent. *See id.* (citing *Miranda*, 133 S.W.3d at 226). If the pleadings are deficient but do not demonstrate an incurable defect, then the issue is one of pleading sufficiency, and the plaintiff should be afforded the opportunity to amend their pleadings. *Id.* (citing *Miranda*, 133 S.W.3d at 226–27). Conversely, if it becomes clear that the plaintiff cannot allege a viable waiver of immunity, then the suit should simply be dismissed. *Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007).

A governmental defendant may challenge the existence of jurisdictional facts and support its argument with evidence. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018). In such instances, the analysis "mirrors that of a traditional summary judgment." *Tex. Dep't of Transp. v. Lara*, 625 S.W.3d 46, 52 (Tex. 2021)

6

(quoting *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 634 (Tex. 2012)). When a governmental entity establishes the absence of a jurisdictional fact, the burden shifts to the plaintiff to raise a genuine issue of material fact for the jury to resolve; otherwise, the trial court should rule on the jurisdictional question as a matter of law. *Miranda*, 133 S.W.3d at 228. "[I]n evaluating the parties' evidence, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *City of San Antonio v. Maspero*, 640 S.W.3d 523, 528–29 (Tex. 2022) (citing *Miranda*, 133 S.W.3d at 228).

### III.   ANALYSIS

The City contends that the Delapenas' pleadings and the jurisdictional record do not support a waiver of immunity. The Delapenas respond that they have alleged two valid claims under the TTCA, and they stress that neither claim is a premises defect claim. They first allege that "the City negligently used real property by operating Buttercup [P]ool in violation of its own adopted safety policies." They describe this claim as both a failure to implement policy and a negligent activity.

Their second claim is based on the City's failure to provide Catiana with a life jacket even though these safety devices were available for her use. The Delapenas contend that this claim falls within the integral safety component doctrine articulated in cases like *Robinson v. Central Texas MHMR Center*, 780 S.W.2d 169 (Tex. 1989).

Finally, in the alternative, the Delapenas ask for an opportunity to amend their pleadings to allege a premises defect claim based on evidence "that the City has [since] placed a lifeguard chair directly over where Catiana drowned." We address each theory

7

of liability and whether it fits within the TTCA's waiver of immunity.[4]

## A. Negligent Implementation of Policy

Negligent implementation of policy is a recognized theory of liability against a governmental entity based on a government employee's inadvertent failure to carry out his employer's established policy. *Maspero*, 640 S.W.3d at 533. However, a claim for negligent implementation of policy is not an independent ground for waiver of immunity. *Id.* Instead, to overcome immunity, such a claim must still fall within the parameters of a statutory waiver. *Id.* To that end, in order to waive immunity for a negligent implementation claim, the plaintiff's injury or death must be "caused by a condition or use of tangible personal or real property." TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2).

Here, the Delapenas allege that City employees violated the City's pool safety policy by admitting the camp into the pool without the requisite number of counselors to adequately supervise the campers. Under the policy, a camp without the requisite ratio of counselors to campers should be denied entrance to the pool.

However, "information" within the City's pool safety policy "is not tangible personal property, since it is an abstract concept that lacks corporeal, physical, or palpable qualities." *See Tex. Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 580 (Tex. 2001) (citing *Univ. of Tex. Med. Branch at Galveston v. York*, 871 S.W.2d 175, 179 (Tex. 1994)).

---

[4] In their live pleading, the Delapenas also alleged a claim against the City for negligent supervision, which they have implicitly abandoned on appeal. *See Tex. Dep't of Fam. & Protective Servs. v. Atwood*, 176 S.W.3d 522, 528 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) (noting that "negligent supervision by DFPS are not actionable against DFPS because negligent supervision claims do not constitute a premise defect or the condition or use of property claim and thus, the [TTCA] does not waive sovereign immunity for such claims" (citing *Tex. Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 581 (Tex. 2001))).

"[S]imply reducing [the policy] to writing on paper does not make the information 'tangible personal property.'" *Id.* (first citing *Dallas County v. Harper*, 913 S.W.2d 207–08 (Tex. 1995); and then citing *York*, 871 S.W.2d at 179). For example, "the information in an emergency room procedures manual is not tangible personal property." *Id.* at 581 (citing *Kassen v. Hatley*, 887 S.W.2d 4, 14 (Tex. 1994)). Therefore, "while instructional manuals can be seen and touched, the Legislature has not waived immunity for negligence involving the use, misuse, or non-use of the information they contain." *Id.* (citing *York*, 871 S.W.2d at 179). Accordingly, this allegation does not give rise to a claim under the TTCA for negligent use of tangible personal property. *See id.*

## B.    Negligent Activity

But rather than using tangible personal property, the Delapenas allege that "the City negligently used real property by operating Buttercup [P]ool in violation of its own adopted safety policies." According to the Delapenas, the City was "using" Buttercup Pool within the meaning of § 101.021(2) "because it was employing [the pool] for a given purpose—as a destination and attraction for day care facilities." And they insist that their claim alleges a negligent activity instead of a premises defect.[5]

The City responds that, within the confines of the TTCA's waiver of immunity, claims based on a use or condition of real property are limited to premises defects, and

---

[5] Premises defects and negligent activities are distinct theories of liability under the common law. *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 388 (Tex. 2016) (first citing *Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 527 (Tex. 1997); and then citing *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992)). "[N]egligent activity encompasses a malfeasance theory based on affirmative, contemporaneous conduct by the owner that caused the injury, while premises liability encompasses a nonfeasance theory based on the owner's failure to take measures to make the property safe." *Id.* (quoting *De Lago Partners v. Smith*, 307 S.W.3d 762, 776 (Tex. 2010)).

the Delapenas have not stated a premises defect claim under the Recreational Use Statute, which we discuss in more detail below. We agree with the City that the TTCA does not waive immunity for a claim based on negligent use of real property separate and apart from premises liability. *State v. Tennison*, 509 S.W.2d 560, 562 (Tex. 1974) (rejecting the argument that the TTCA "creates two entirely separate grounds of liability" for negligent use or condition of real property and a premises defect, but instead interpreting the premises defect provision to further limit the waiver of immunity for negligent use or condition of real property); *see Sampson*, 500 S.W.3d at 385 (explaining "that a claim for a condition or use of real property is a premises defect claim under the [TTCA]"); *see also Miranda*, 133 S.W.3d at 233 ("Texas courts have recognized that to allow plaintiffs to characterize premises defect claims as claims caused by the negligent condition or use of personal or real property would render the Legislature's heightened requirements for premises defect claims meaningless." (collecting cases)). Thus, any claim based on the negligent use of Buttercup Pool must sound in premises liability. *See Sampson*, 500 S.W.3d at 385; *Tennison*, 509 S.W.2d at 562.

In any event, "we look to the true nature of the dispute" rather than the plaintiff's characterization of the claims. *Univ. of Tex. M.D. Anderson Cancer Ctr. v. McKenzie*, 578 S.W.3d 506, 513 (Tex. 2019). Here, the true nature of the Delapenas' claim is that City employees failed to act when, instead of enforcing the City's policy and denying the camp admission, they granted the camp access to the premises without ensuring campers would be adequately supervised by camp counselors.

Generally, a failure to perform some act does not constitute a "use" of property.

*Univ. of Tex. Med. Branch at Galveston v. Kai Hui Qi*, 402 S.W.3d 374, 389–90 (Tex. App.—Houston [14th Dist.] 2013, no pet.) ("[A] state entity's failure to act does not invoke the [TTCA's] limited waiver of immunity."); *see, e.g.*, *Dallas Cnty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex. 1998) ("The real substance of plaintiffs' complaint is that Roger's death was caused, not by the condition or use of property, but by the failure of Hillside's staff to restrain him once they learned he was still suicidal. The [TTCA] does not waive Dallas County MHMR's immunity from such a complaint.").

Because the gravamen of the Delapenas' first claim is the misuse or non-use of information in the City's policy, we conclude that this claim is not actionable under the TTCA.

## C.    Integral Safety Component Doctrine

With their second claim, the Delapenas allege that the City failed to provide Catiana with an available lifejacket. Although the TTCA waives immunity for the negligent "use" of tangible personal property, "mere non-use" of tangible personal property is not actionable under the TTCA. *McKenzie*, 578 S.W.3d at 513 (citing *Kerrville State Hosp. v. Cowan*, 128 S.W.3d 244, 246 (Tex. 2004)); *see* Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2). The distinction between "use" and "non-use" has not always been an easy one to draw, and the Delapenas rely on a series of cases described by the Supreme Court of Texas as "the outer bounds of what we have defined as use of tangible personal property." *Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 585 (Tex. 1996).

One of those cases has some obvious parallels to this case. In *Robinson*,

11

employees from a state mental health center took a patient swimming, and despite knowing that he suffered from epileptic seizures that could cause him to lose consciousness, the employees failed to equip that patient with an available life preserver. 780 S.W.2d at 169. The patient drowned, and his family sued the health center claiming its failure to provide a life preserver constituted a condition or use of tangible personal property. *Id.* The supreme court found that because the health center "was responsible for patients being dressed in appropriate swimming attire," the center's failure to also furnish the patient with an available life preserver constituted a negligent use of tangible personal property. *Id.* at 171. Seeking to square cases like *Robinson* with the TTCA's "use" requirement, the supreme court has since explained that "[t]he precedential value of these cases is . . . limited to claims in which a plaintiff alleges that a state actor has provided property that lacks an integral safety component and that the lack of this integral component led to the plaintiff's injuries." *Clark*, 923 S.W.2d at 585.

The Delapenas contend that this case is analogous to *Robinson* because the City failed to provide Catiana with an available life jacket. However, unlike *Robinson*, there is no allegation or evidence to suggest that the City provided any equipment, such as swimming attire, to Catiana or the other campers. *See* 780 S.W.2d at 169. Instead, the Delapenas argue that the City "provided the use of Buttercup [P]ool but failed to offer an integral safety component" in the form of a life jacket.

While a life jacket is certainly a safety device, we do not agree that a life jacket is a "component" of a pool. *See Clark*, 923 S.W.2d at 585. Regardless, the integral safety component doctrine is limited to negligent "use of tangible personal property." *Id.*; *see,*

12

*e.g.*, *Robinson*, 780 S.W.2d at 169 (providing swimming attire without a life preserver); *Lowe v. Tex. Tech Univ.*, 540 S.W.2d 297, 300 (Tex. 1976) (providing a football uniform without a knee brace); *Overton Mem'l Hosp. v. McGuire*, 518 S.W.2d 528, 529 (Tex. 1975) (per curiam) (providing a hospital bed without bed rails). As the Delapenas acknowledge, Buttercup Pool is real property, not tangible personal property; therefore, its "use" cannot serve as the basis for an integral safety component claim. *See Clark*, 923 S.W.2d at 585. Stated differently, the Delapenas cannot tie the non-use of the life jacket to the "use" of the premises; to do so would run contrary to the supreme court's admonition that a claim cannot "be both a premises defect claim and a claim relating to a condition or use of tangible property." *Sampson*, 500 S.W.3d at 385 (citing *Miranda*, 133 S.W.3d at 233).

We conclude that the Delapenas have not stated a claim under the integral safety component doctrine. Instead, they have stated a claim for "mere non-use" of tangible personal property that is not actionable under the TTCA. *See McKenzie*, 578 S.W.3d at 513 (citing *Cowan*, 128 S.W.3d at 246).

**D.      Opportunity to Replead**

In the event we find the Delapenas have not alleged a valid waiver of immunity, they ask that we remand the case so that they may amend their pleadings to allege a premises defect claim. According to them, "[e]vidence before the trial court indicates that Buttercup [P]ool may have lacked a sufficient number of lifeguard stands, which thus operated to create an unsafe condition." They point to a witness who testified that she "saw a new lifeguard chair in the middle of the pool where somebody would have been able to see where that little kiddo drowned."

13

Under the TTCA, "if a claim arises from a premise defect, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property, unless the claimant pays for the use of the premises." TEX. CIV. PRAC. & REM. CODE ANN. § 101.022(a). But when a premises defect claim involves a recreational activity, such as swimming, the Recreational Use Statute further limits the premises owner's liability by imposing a specialized duty to "refrain from gross negligence, or from acting with malicious intent or in bad faith." *See id.* §§ 75.001(3)(C) (defining "recreation" to include swimming), 75.002(d) (establishing duty of care); *City of Waco v. Kirwan*, 298 S.W.3d 618, 623 (Tex. 2009) ("[A]lthough the recreational use statute references a trespasser standard, it actually creates a specialized standard of care, one not exactly consistent with the common-law trespasser standard." (citing *State v. Shumake*, 199 S.W.3d 279, 286–87 (Tex. 2006))). Gross negligence is defined as "an act or omission involving subjective awareness of an extreme degree of risk, indicating conscious indifference to the rights, safety, or welfare of others." *Kirwan*, 298 S.W.3d at 623 (quoting *Shumake*, 199 S.W.3d at 287). "[W]hat separates ordinary negligence from gross negligence is the defendant's state of mind; in other words, the plaintiff must show that the defendant knew about the peril, but his acts or omissions demonstrate that he did not care." *La.–Pac. Corp. v. Andrade*, 19 S.W.3d 245, 246–47 (Tex. 1999) (first citing *Williams v. Steves Indus., Inc.*, 699 S.W.2d 570, 573 (Tex. 1985); and then citing *Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 922 (Tex. 1981)).

"[A] defendant may be liable for gross negligence only to the extent that it owed the plaintiff a legal duty." *Kirwan*, 298 S.W.3d at 623 (collecting cases). Under the

14

Recreational Use Statute,

> landowners owe a duty to warn or protect recreational users when artificial conditions create dangerous conditions that are not open and obvious, but [they] have no duty to warn or protect against conditions that are open or inherent, and thus obvious, regardless of whether such conditions are naturally or artificially created.

*Suarez v. City of Texas City*, 465 S.W.3d 623, 627 (Tex. 2015) (collecting cases). For example, in *Shumake*, the plaintiffs alleged that a hidden man-made culvert created a powerful undertow that caused their nine-year-old daughter to drown in a state park. 199 S.W.3d at 281. The supreme court concluded that the plaintiffs had stated a claim for gross negligence under the Recreational Statute, in part, because the powerful undertow created by the hidden man-made culvert represented a latent defect that was not open and obvious.[6] *Id.* at 288.

Here, the Delapenas have not alleged, or suggested on appeal, that the pool itself contained a latent defect, and there is no evidence in the record to support such a conclusion. *See, e.g.*, *id.* at 281; *City of El Paso v. Collins*, 483 S.W.3d 742, 755 (Tex. App.—El Paso 2016, no pet.) (malfunctioning drain concealed by cloudy pool water was a latent defect), *overruled on other grounds by Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550–51 & n.8 (Tex. 2019); *City of Houston v. Cavazos*, 811 S.W.2d 231, 231 (Tex. App.—Houston [14th Dist.] 1991, writ dism'd) (fifteen-foot drop-off concealed by murky water constituted a latent defect). Moreover, we agree with the City that the

---

[6] The plaintiffs further alleged that, despite receiving several recent reports of near drownings in the same area, the Parks Department failed to make the culvert safer or warn of the danger. *State v. Shumake*, 199 S.W.3d 279, 281(Tex. 2006). The supreme court concluded that this allegation satisfied the requirement that the Parks Department was subjectively aware of an extreme degree of risk but failed to act. *Id.* at 288.

Delapenas have failed to identify any condition, artificial or otherwise, at Buttercup Pool that was not open or inherent to swimming.

Rather, the Delapenas only contend that the City failed to take an additional step to protect swimmers from the natural perils of swimming at its pool. *See Mullens v. Binsky*, 130 Ohio App.3d 64, 719 N.E.2d 599, 604 (10th Dist. 1998) (concluding that the risk of drowning at a pool "is an open and obvious condition"); *cf. Suarez*, 465 S.W.3d at 634 (acknowledging that there are "risks inherently associated with open-water swimming"). Even if we assume such a duty existed, the record affirmatively negates a finding that the City was consciously indifferent to swimmer safety.

The record in this case reflects that, prior to Catiana's death, the City hired a risk management consultant to evaluate the City's operation of Buttercup Pool. The consultant's report, written approximately six weeks before the incident, specifically found that Buttercup Pool's use of two lifeguard stands, one covering the deep end of the pool and the other covering the shallow end, was adequate to safely monitor all swimmers in the pool. The Delapenas have not suggested there were any prior incidents at Buttercup Pool that would undermine the City's reliance on the consultant's report. *See Shumake*, 199 S.W.3d at 281, 288 (concluding that plaintiffs stated a claim for gross negligence, in part, because the Parks Department received several recent reports of near drownings but failed to act).

The record also shows, as previously mentioned, that the City had developed safety rules and policies, including a specific policy regarding procedures for camps visiting the pool. Additionally, the City employed trained lifeguards, and provided life

16

jackets for swimmers to use.[7] These acts, among others, demonstrate that the City was consciously aware of the natural dangers associated with swimming and undertook substantial affirmative steps to ameliorate those dangers.

The Delapenas' proposed claim—that the City created an unsafe condition by placing two, instead of three, lifeguard stands around the pool—is internally inconsistent with the idea that the City was consciously indifferent to the safety of swimmers. At most, the claim concerns an alleged error in judgment, which cannot support a finding of gross negligence. *See Lee Lewis Const., Inc. v. Harrison*, 70 S.W.3d 778, 791 (Tex. 2001) (Hecht, J., concurring) ("'Gross negligence' means more than momentary thoughtlessness, inadvertence, or error of judgment. It means such an entire want of care as to establish that the act or omission in question was the result of actual conscious indifference to the rights, welfare, or safety of the persons affected by it."); *see also Kirwan*, 298 S.W.3d at 627 (explaining that "some evidence of simple negligence is not evidence of gross negligence" (quoting *Lee Lewis Const.*, 70 S.W.3d at 785)). Consequently, remanding the case for further pleading would be inappropriate. *See Koseoglu*, 233 S.W.3d at 840.

E.    Summation

We sympathize with the Delapenas and acknowledge that the lines drawn by the Legislature—waiving immunity in some cases, but not in others—often lead to unjust results for those injured by the malfeasance of government employees. *See Hillman v.*

---

[7] According to an investigation conducted by the Cedar Park Police Department, the Buttercup Pool staff were not informed by High Hopes Summer Camp that any of the campers needed lifejackets. The investigation also suggests that there was a miscommunication amongst camp staff regarding which campers needed lifejackets.

*Nueces County*, 579 S.W.3d 354, 361 (Tex. 2019) ("We are not blind to the truism that, 'just as immunity is inherent to sovereignty, unfairness is inherent to immunity.'" (quoting *City of Galveston v. State*, 217 S.W.3d 466, 480 n.38 (Tex. 2007) (Willett, J., dissenting))); *Robinson v. Crown Cork & Seal Co.*, 335 S.W.3d 126, 160 (Tex. 2010) (Willett, J. concurring) ("As litigants often discover, in the Legislature a deal is sometimes a raw deal."). The TTCA has been routinely criticized by jurists for its difficult application and arbitrary outcomes. *See Sampson*, 500 S.W.3d at 386–87 (collecting cases calling on the Legislature to amend the TTCA); *Robinson*, 780 S.W.2d at 175 (Hecht, J., dissenting) ("I confess that not all the consequences of construing 'use' to exclude 'non-use' seem entirely sensible."). Nevertheless, until the Legislature sees fit to redraw those lines, we are duty bound "to interpret and apply the statute as written." *Sampson*, 500 S.W.3d at 387 (quoting *Abutahoun v. Dow Chem. Co.*, 463 S.W.3d 42, 49 (Tex. 2015)). Because the circumstances of this case do not fall within the TTCA's limited waiver of immunity, the trial court erred in denying the City's plea to the jurisdiction.

## IV.    CONCLUSION

We reverse and render a judgment of dismissal for want of jurisdiction.

GINA M. BENAVIDES
Justice

Delivered and filed on the
17th day of November, 2022.

18